THOMASON VS MCLAUGHLIN.

Opinion rendered June 14, 1907.

(103 S. W. Rep. 595).

1. *Landlord and Renter—Unlawful Detainer—Action by Vendee of Landlord*
   Under the Statute unlawful detainer lies by a vendee of land against the lessee of his vendor, who holds over after his lease expires though the vendee has never been in actual possession of the land.

2. *Indians—Lands—Actions for Unlawful Detainer—Complaint—Sufficiency.*,
   A complaint in an action of unlawful detainer, alleging that plaintiffs were Indians entitled to an allotment, and that they desired to take the lands in controversy in allotment, and were not in possession of other lands than those in controversy, sufficiently alleged, as against a demurrer, that plaintiffs were holding the land for the purpose of allotment.

3. *Same.*
   In an action of unlawful detainer by Indians residing in Indian Territory, a complaint alleging that plaintiffs were the owners of the premises and entitled to their immediate possession was sufficient on demurrer; the fact if it be true, that plaintiffs were holding more than their share of the lands of their nation or tribe, in violation of the provisions of the Curtis bill (Act June 28, 1898, c. 517, §§ 16, 17, 30 Stat. 501, 502), limiting the extent of an Indian's holding before allotment, and making the holding of more land a misdemeanor, being defensive matter to be set up by answer.

CLAYTON, J. This is an action of unlawful detainer, brought by the appellant against the appellee to recover the possession of a certain tract of land situated in the Cherokee Nation. The complaint is as follows: "Plaintiffs state; That Rachel F. Thomason is a married woman, and that her husband is the coplaintiff, John S. Thomason, and that they both reside

in the Northern district of the Indian Territory, and that they have two minor children, who are citizens by blood of the Cherokee Nation, and all of them are entitled to take allotment in said Nation and they desire to take the lands incontroversy in allotment, and are not possessed of other lands than the lands in questions, and defendant resides therein and nearer Vinita than any other place of holding court therein. That plaintiffs are both citizens of the Cherokee Nation, and the defendant is a citizen of the United States. That in March, 1894, the defendant entered into the possession of the following described lands, namely:  (Describing lands).  That he entered under a lease contract with B. F. Lafon, a citizen of the Cherokee Nation, who as a Cherokee citizen owned said land, which contract was in writing, and by the terms of which said contract the defendant within three years thereafter, as a condition of his right to further occupy said premises, should erect a six-wire fence around all said lands and break out the land and put it in cultivation.  That defendant failed to erect said fence and to break out said land, and thereby he ceased to have a right to occupy the premises other than a sufficient time to compensate him for the improvements he made upon the premises.  That defendant has now occupied the premises for a longer time than has been sufficient to compensate him for the improvements he has made.  That under the contract with said Lafon the defendant became the lessee of said Lafon, and, had he complied with the conditions of the lease according to the terms, he would have been entitled to occupy the premises for eight years, but that by reason of his failure to make the improvements required his right to occupy the premises after three years, except in so far as it was necessary to compensate him for his improvements, and under the provisions of the Curtis law the said lease expired January 1, 1900, which time is now passed.  That said B. F. Lafon sold to plaintiff R. F. Thomason said place and premises so occupied by the defendant

on the 1st day of February, 1899, and the plaintiff R. F. Thomason is now the owner of said premises and entitled to their immediate possession. That on January 2, 1900, the plaintiffs made demand of defendant in writing for the immediate delivery of possession of the premises, and defendant refused to surrender possession of the same, and still unlawfully detains same. Wherefore," etc.

To the complaint the following demurrer was filed: "Comes the defendant, and * * * demurs to the complaint, * * * and for the grounds of said demurrer states: That said complaint does not state facts sufficiently to constitute a cause of action against said defendant. That it appears upon the face of said complaint that the plaintiff purchased the improvements sued for in this action after the passage of the so-called Curtis bill, or subsequent to June 28, 1898. That the defendant was a citizen of the United States, in possession of the place at the time of said purchase under an improvement contract on said place, and that the said plaintiff was never in possession of said premises, nor any portion of same, prior to, at the time of, or subsequent to the passage of said Curtis bill, to wit, June 28, 1898. Said complaint fails to show that said plaintiff is holding said premises for an allotment for himself or for any member of his family, or her family, and fails to show that said place would be their just and reasonable share of the Cherokee Nation, and that to which her husband, her minor children, and herself are entitled under allotment of such land in the Cherokee Nation." This demurrer was overruled, and an answer to the complaint was filed; but for reasons that will hereafter appear it is not necessary to set out the answer.

A jury was impaneled, and, quoting from the record: "Thereupon the witnesses in the case were called into open court, duly sworn, and put under the rule by the court. Counsel for the plaintiffs stated his case to the jury, and counsel for the

defendant stated his case to the jury, submitting to the jury
what the testimony in the case would be by sworn witnesses
in the case.    Thereupon the court, of his own motion, discharged
the jury, set aside the order previously made overruling the
demurrer to the plaintiffs' complaint, and sustained the said
demurrer to said complaint." What was said, or what ad-
mission made by counsel, if any, in stating the case, or what
it was that induced the court to change its position as to the
sufficiency of the complaint nowhere appears in the record.
Of course, the setting aside of the order overruling the de-
murrer, and the order sustaining it, eliminates from the case
the answer, and all facts except those set up in the complaint,
which by the filing of the demurrer are to be taken as true.    The
only question, therefore, presented for our consideration is, does
the complaint on its face set up a cause of action?    It is con-
tended, first, that, as it is shown by the face of the complaint
that the plaintiff was the vendee of defendant's landlord, the
relation of landlord and tenant did not exist between the parties
to the suit; second, that plaintiff had never been in possession
of the premises; third, that, plaintiff having purchased the
premises after the enactment of the so-called Curtis bill, the
sale was void, first, because the complaint fails to show that
plaintiff was holding the premises for an allotment for
herself, her husband and minor children, and second, because
the complaint fails to show that the premises would be the
just and reasonable share as their allotment.

The first two propositions—that is, whether the relation
of landlord and tenant, as stated in the complaint, existed
between the parties, and whether actual possession of the
premises by the plaintiff is necessary to sustain the suit of
unlawful detainer—may be considered together; and both
questions are authoritatively settled by the decision of the
Supreme Court of Arkansas in the case of Bradley vs Hume,
18 Ark. 284, decided in 1857.    In that case, the defendant had

leased the lands in controversy in that suit from one Moore-house for a term of eight years. Afterward the lease was canceled and on a day thereafter named in the agreement of cancellation the defendant was to surrender the leased premises to Moorehouse. After the date of the execution of the cancellation agreement, and before the day on which possession was to be given thereunder, the plaintiff purchased from Moorehouse the leased premises. The defendant failed to surrender the premises at the time agreed in the cancellation contract, and held over. Upon demand in writing for possession served on him by plaintiff, he refused to surrender the premises, and unlawful detainer was brought. Upon these facts the court say: "The substance of the declaration is that Moorehouse leased the land to the defendant and afterwards sold it to the plaintiff, and that the defendant held over after the determination of his lease. If the plaintiff could not maintain an action of unlawful detainer unless he had been actually in possession of the land and let it directly himself to the defendant, or to some one under whom he claimed, the declaration is insufficient." The court, then, in deciding that such was not the law and that neither attornment nor actual possession was necessary, after illustrating by a number of hypothetical cases the evil results which would flow from such a construction, say: "But, upon a careful examination of all the provisions of the statute relating to this form of action, there is not an expression in any section that is inconsistent with the right of action in cases like those above referred to; but the scope, spirit, and manifest intention of the statute, as indicated by all of its provisions, favor the right of action in such cases. In the declaration now before us there is no allegation that the defendant attorned to the plaintiff after he purchased the premises of Moorehouse, the landlord; yet, upon the hypothesis that it was necessary for the plaintiff himself to have been actually possessed of the land to have entitled him to bring the action, such an allegation would not

have bettered the declaration. If the allegations in the declaration be true, and they must be so regarded on demurrer, the plaintiff succeeded to the right of possession of the landlord, as against the defendant, who, under a general rule of law, was estopped from denying that he occupied the premises as a mere tenant. On the trial of an issue to the declaration if the plaintiff could prove the lease by Moorehouse to the defendant, his occupation as a mere tenant under the lease, the determination of his term, the purchase by the plaintiff of Moorehouse, and the refusal of the defendant to surrender the possession on demand in writing, as alleged in the declaration, we think the plaintiff would make out a prima facie case for recovery." The case of McGuire vs Cook, 13 Ark. 448, holding actual possession of the premises by plaintiff to be necessary, is considered by the Supreme Court in the case of Bradley vs Hume, and, in so far as it holds that doctrine, is overruled. This construction of the Supreme Court of Arkansas has been repeatedly upheld in many decisions of that court since that time. Ish. vs Morgan, 48 Ark. 413, 3 S. W. 440; Mason vs Delancy, 44 Ark. 444; Johnson vs West, 41 Ark. 535; Halliburton vs Sumner, 27 Ark. 460.

The case of McCauley vs Hazlewood, 59 Fed. 877, 8 C. C. A. 339, decided by the United States Circuit Court of Appeals for the Eighth Circuit, relied on by the defendant is not an analagous case to this. There the vendee of a leasehold estate undertook to obtain possession of the premises by unlawful detainer. Hazlewood, the defendant, was in possession of land under a lease. He exchanged his leasehold with McCauley for a horse. This did not create the relation of landlord and tenant between them. It was simply that of vendor and vendee, and, of course, the action of unlawful detainer could not be upheld. The court well said that "the proof offered at the trial was sufficient to show a right of possession in the plaintiff, which might possibly entitle him to maintain a suit

in ejectment against Hazlewood; but it had no tendency to establish the relation of landlord and tenant, either express or implied, such as is essential to support the action." The Circuit Court of Appeals, in the same case, held that the "statute * * * must receive the same interpretation in the Indian Territory that had been given to it by the court of last resort in the state of Arkansas before it was imported into the Indian Territory," and therefore, as the statute, before it was extended over the Indian Territory, was interpreted by the Supreme Court of Arkansas, in the case of Bradley vs Hume to be that the action of unlawful detainer was the proper action to be brought by a vendee of land against the lessee of his vendor, who was holding over after the expiration of the term of his lease, although the vendee had never been in the actual possession of the land, it is the law here, and settles these points in the case in favor of the sufficiency of the complaint to that extent.

The next contention of defendant is that the sale of the land by B. F. Lafon to the plaintiff, having occurred after the enactment of the Curtis bill, was void. Plaintiffs are all Cherokee Indians. Lafon is a Cherokee Indian. The defendant was a white man, holding an improvement lease under Lafon. As it is the validity of the sale of Lafon to the plaintiff, both Indians, which is attacked, the citizenship of defendant, a mere lessee cuts no figure in the case. The defendant does not attack the title of Lafon, his lessor. That, in this action, he could not do, unless it was acquired in contravention of the law, or of public policy; nor could he dispute his right to sell, except, possibly, for the same reason. This is what he seeks to do in this case. The Curtis bill (30 Stat. 495, c. 517) was enacted June 28, 1898. The lease from Lafon to defendant was executed in March, 1894, more than four years before the enactment of the statute. The sale to plaintiff was on the 1st day of February, 1899, and therefore after the passage

of the act. It was the ordinary transaction, which at that time prevailed, of one Indian selling his improvements and right of possession to Indian lands occupied by him to another for the purpose of an allotment. The allegation of the complaint is that plaintiff desired the land for an allotment, and that they owned none other, and that "they were Cherokee Indians, and entitled to an allotment." On this point it is contended, first, that the complaint failed to show that plaintiffs were holding the premises for the purpose of allotment. We think, if it be conceded that such an allegation were necessary, that the allegation that plaintiffs were "Cherokee Indians, entitled to an allotment, and that they desired to take the lands in controversy in allotment, and are not possessed of other lands than the land in controversy," as against a demurrer, is a sufficient statement that they were holding it for that purpose. When an Indian is the owner of the Indian title to land, and has constructive possession of it, and owns none other, and states that he desires it for his allotment, it occurs to us that it would not be a difficult matter to find the purpose for which he was holding it. If there were a doubt about it, the proper pleading under our system of practice would have been to file a motion to make it more certain; and this should have been done before filing the demurrer.

Second, it is contended "that the complaint fails to show that said place would be plaintiff's just and reasonable share of the lands of the Cherokee Nation to which plaintiff, her husband and minor children would be entitled." Defendant's counsel, in support of this contention, relies on the provisions of the sixteenth and seventeenth sections of the Curtis bill, which are as follows:

"Sec. 16. That it shall be unlawful for any person, after the passage of this act, except as hereinafter provided, to claim, demand or receive, for his own use or for the use of any one

else, any royalty on oil, * * * or any rents on any lands or property belonging to any one of said tribes or nations in said territory, or for any one to pay to any individual any suchrents: * * *. Provided, that where any citizen shall be in possession of only such amount of agricultural or grazing lands as would be his just and reasonable share of the lands of his nation or tribe and that to which his wife and minor children are entitled, he may continue to use the same, or receive the rents thereon until allotment has been made to him.

"Sec. 17. That it shall be unlawful for any citizen of any one of said tribes to inclose, or in any manner, by himself, or through another, directly or indirectly, to hold possession of any greater amount of lands or other property belonging to any such nation or tribe than that which should be his approximate share of the lands belonging to such nation or tribe, and that of his wife and his minor children as per allotment herein provided.        *        *        *        "

It is true that section 17 limits the extent of an Indian's holding before allotment to the approximate share of the lands to which he and his wife and minor children are entitled, and if, at the expiration of nine months after the passage of this act, he be found in possession of an excess of such share, he is declared to be guilty of a misdemeanor; and inasmuch as the sale in this case was made within the nine months limit, this, of course would not affect the validity of the sale, even though Lafon had been in possession of more land than that to which he was entitled. It is a well-known fact that many Indians, at the time of the passage of this act, were in possession of large tracts of improved lands, in excess of that to which they were entitled; and under the laws and customs of the different tribes at that time this land was lawfully held. The nine months provision was introduced into the Curtis bill for the purpose of giving them an opportunity of disposing of the excess, and thereby to get some remuneration for the improve-

ments which they, by their labor and industry, had lawfully made upon the lands. And there is no provision in either of these sections, or anywhere else, that could be construed to deprive an Indian in this territory of the right to dispose of his holdings to another Indian if he desired to do so, in order that he might select his allotment on other lands.' The statute did not intend that an Indian should be compelled to take his allotment on the land then held by him. He could sell his improvements and holdings to another Indian for allotment, and lay his own on other land which he might find vacant, or which he might in turn purchase from another Indian. This method was adopted almost universally by the Indians, and it was not unlawful as between Indians. But to hold an excess of lands after the expiration of the nine months was unlawful and a crime. And as this suit was brought long after the nine months had elapsed, if the plaintiff were holding an excess, or if that excess comprised the particular land in controversy, the plaintiff being without title and holding it in contravention of positive law and public policy, the defendant could attack his title as to that. Owens vs Eaton, 82 S. W. 746, 5 Ind. Ter. 275.

But is not this defensive? Is the plaintiff called upon to plead his crime? The complaint alleges that she is now the "owner of said premises and entitled to their immediate possession." The demurrer admits it. This, of course, means that she is the legal owner, and, if there be anything connected with her title which a tenant would be allowed to set up against his landlord's title he must allege it in his answer and follow the allegation with proof. We are of the opinion that the complaint was sufficient to call for an answer, and that, therefore, the court below erred in sustaining a demurrer to it.

The judgment of the court below is reversed, and the cause remanded.

TOWNSEND and LAWRENCE, JJ., concur.