## WILLIAMS *v.* FIRST NATIONAL BANK OF PAULS VALLEY.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 130.    Argued March 9, 1910.—Decided March 21, 1910.

A question of a Federal nature is raised by the contention, if denied by the state court, that a right or privilege exists under a Federal statute to remove the case into the Federal court.

The power of this court to review cases removed from the United States courts for Indian Territory to the state courts of Oklahoma under the provisions of the Enabling Act as amended by act of March 4, 1907, c. 2911, 34 Stat. 1287, is controlled by § 709, Rev. Stat.

Where plaintiff's right to recover is not predicated on any Federal right, the fact that the defense is that the transaction was prohibited by Federal law does not make the case one arising under the Constitution or laws of the United States. *Arkansas* v. *Kansas & Texas Coal Co.*, 183 U. S. 185.

Compromises of disputed claims are favored by the courts, *Hennessey* v. *Baker*, 137 U. S. 78, and the consideration on which a compromise is based will be sustained unless there is an express or implied statutory prohibition against the transaction.

There is no statutory prohibition against a member of either the Choctaw or Chickasaw tribe, not holding any excess of lands subject to allotment, selling his improvements upon tribal land or abandoning his right of possession thereof to another Indian. *Thomason* v. *McLaughlin*, 103 S. W. Rep. 595, approved.

Where the asserted Federal questions are not frivolous, but are so devoid of substance as to be without merit the writ will not be dismissed but the judgment will be affirmed.

20 Oklahoma, 274, affirmed.

THE defendant in error commenced this action in the United States Court for the Southern District of Indian Territory. The now plaintiffs in error were named as defendants. S. L. and S. T. Williams are brothers, and Jennie L. Williams is the wife of the defendant S. L. Williams. Recovery was

sought by the bank, as an innocent holder for value, before maturity, upon a note for five thousand dollars, executed by the defendants, dated February 4, 1904, and payable to the order of Susan E. Mays, with interest. The consideration for the execution of the note was thus alleged in an amended complaint:

"Plaintiff further alleges and charges the truth to be that the said note was executed by the said Jennie Lee Williams for the benefit of her separate estate; that at the time of the execution of said note a contest was pending before the Commission to the Five Civilized Tribes, which said body at said time had authority under law to entertain and hear the same between the said Jennie Lee Williams, one of the makers of said note, and Susan E. Mays, the payee therein, to determine which of the said parties had a right to take in allotment a certain tract of land located adjacent to the town of Maysville, Indian Territory; that said [note] was executed by the said Jennie Lee Williams, S. L. Williams and S. T. Williams, in consideration of the abandoning of said contest by the said Susan E. Mays, the payee therein; that after said note was executed the said Susan E. Mays did abandon her contest, and permit the said Jennie Lee Williams to take the said land in allotment, which she did, and the said land thereby became and is her separate property."

The amended complaint was demurred to on the following grounds:

"1st. Because the said amended complaint does not state facts sufficient to constitute a cause of action, and does not entitle plaintiff to the relief prayed for.

"2d. Because the transferee of a nonnegotiable note must aver and prove consideration for the transfer; and the note in suit is nonnegotiable, and plaintiff fails to aver any consideration whatever for the transfer.

"3d. Because section 16 of the Atoka agreement provides the only legal way Indian lands may be sold, and where a statute positively declares a thing cannot be done the law

will not suffer its policy and purpose to be thwarted by any
subterfuge or ingenious contrivance clothed with the sem-
blance of legality.   This was a short-cut attempt to sell 40
acres of land, title to which was in the Indians.

"4th. Because the Dawes Commission had exclusive juris-
diction to determine all matters in controversy between
members of the tribes as to their right to select particular
tracts of land 'for allotment, and to determine the rights, if
any, of Mrs. Susan Mays in the contest for said 40 acres of
land; but the original payee of the note sued on, for a bare
promise violated the law in such case made and provided.

"5th. Because it appears from the allegations in said com-
plaint that the note sued on herein and for the amount and ac-
crued interest of which the plaintiff seeks a judgment against
the defendants was executed pursuant to an alleged contract
entered into by and between the defendant, Jennie Lee Wil-
liams, and Susan E. Mays, in that said complaint shows that
the sole and only consideration of said note was the agreement
of the said Susan E. Mays to abandon a certain contest which
she had instituted against the said defendant Jennie Lee
Williams, before the Commission to the Five Civilized Tribes
at Tishomingo, wherein she claimed the right to select as a
part of her allotment certain premises which had been filed
on and selected by the said Jennie Lee Williams as a member
of the tribe of Chickasaw Indians.

"6th. Said complaint upon its face shows that the said note
was executed by the defendants to the said Susan E. Mays
for an illegal consideration and was executed without any con-
sideration whatever, and of all this the defendants pray the
judgment of the court."

The demurrer was overruled.   In an amended answer,
thereafter filed, after admitting the making of the note and
averring that it was executed by Jennie Lee Williams as prin-
cipal and by the other defendants as sureties, the following
allegations were made:

"1st. The defendants admit that heretofore, to wit, on the .

4th day of February, 1904, they executed and delivered unto Susan E. Mays their promissory note for the principal sum of five thousand dollars, due ninety days from date, and they admit that said note as so executed is copied in the plaintiff's first amended complaint, and that the same is witnessed by James A. Cotner, and they admit that the defendant Jennie Lee Williams is a married woman and the wife of the defendant S. L. Williams, but they allege and charge that said note was executed by Jennie Lee Williams as principal and S. L. Williams and S. T. Williams as sureties.

"These defendants deny, as alleged in the complaint, that said note was executed by the said Jennie Lee Williams for the benefit of her separate estate; but they admit that at the time of the execution of the said note a contest was pending before the Commission to the Five Civilized Tribes between Susan E. Mays, as contestant, and Jennie Lee Williams, as contestee, and that the purpose of said contest, as instituted by the said Susan E. Mays, was to determine whether she or the said contestee had a right to take in allotment a certain tract of land located adjacent to the town of Maysville, Indian Territory; but these defendants deny that said note was executed by the said defendants Jennie Lee Williams, S. L. Williams and S. T. Williams, in consideration of the withdrawal of the said Mrs. Susan E. Mays from said contest, as aforesaid; and they deny that the said Susan E. Mays did withdraw her contest and permit the said Jennie Lee Williams to take the said lands in allotment; and that by reason of the withdrawal of the said Susan E. Mays from said contest that said land became and was the separate property of the said defendant Jennie Lee Williams; but defendants allege and charge the truth to be that since the execution and delivery of said note as aforesaid that said Commission aforesaid has duly awarded and delivered to said defendant Jennie Lee Williams certificate to said land.

"2d. But these defendants allege and charge the truth to be that sole and only consideration of said note, as aforesaid,

was the pretended and illegal sale of certain lands situated near Maysville, in the Chickasaw Nation, Indian Territory, by the said Susan E. Mays to the said Jennie Lee Williams; that said pretended sale was illegal, fraudulent and void; that the same was made, executed and delivered by said Susan E. Mays to said Jennie Lee Williams in violation of and in contravention of the provisions of a treaty made by and between the United States and the Chickasaw and Choctaw tribes of Indians in the year 1902, which said treaty was ratified by a majority vote of said tribes and by act of the Congress of the United States, and in violation of and in contravention of the provisions of a treaty of the United States and the said tribes of Indians, made, concluded and ratified by said tribes and the Congress of the United States in the year 1898, and known as the 'Atoka Agreement,' and that by reason thereof said pretended conveyance from said Susan E. Mays to said Jennie Lee Williams is illegal, fraudulent and void, and of no effect, and that by reason of the premises aforesaid the said note herein sued for, when executed, was and hitherto since has been, illegal and void and without consideration. A copy of said conveyance is hereto annexed and marked 'Exhibit A,' and made a part hereof.

"3d. And still further answering herein, the defendants say that the plaintiff ought not further prosecute and maintain this action against them because they allege and charge that at the date of the execution of said conveyance from Mrs. Susan E. Mays to Jennie Lee Williams, as aforesaid, said Susan E. Mays did not have the possession, right or title to the premises in said conveyance described, and did not own the improvements situated thereon, and had no interest therein which she could convey to the defendant Jennie Lee Williams, and that the consideration of the note herein sued on for that reason has totally failed; all of which the defendants are prepared and willing to verify, and they put themselves upon the country and pray the judgment of the court that they be discharged, with their costs."

Exhibit "A," omitting the acknowledgment, reads as follows:

"TISHOMINGO, INDIAN TERRITORY, February 4, 1904.
" Know all men by these presents:

"That I, Susan E. Mays, of Maysville, Indian Territory, for and in consideration of the sum of one dollar, ($1), cash in hand to me this day paid by Samuel L. Williams, Jennie Lee Williams, and receipt of which money is hereby acknowledged, and the further consideration of the sum of five thousand dollars, ($5,000,) to be paid me by said Samuel L. Williams, Jennie Lee Williams, on the 4th day of May, 1904, which indebtedness is evidenced by a promissory note of even date herewith, due on the 4th day of May, 1904, bearing interest at the rate of eight per cent per annum from date, signed by S. L. Williams, Jennie Lee Williams and S. T. Williams. I hereby bargain, sell, and convey and relinquish all my right, title or claim which I have in any way in and to the possession of the lands and improvements situated upon the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of sec. 16, and the N. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ sec. 16, and the S. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of sec. 16, all in township 4 N., range 2 W., Chickasaw Nation, Indian Territory.

"Relinquishing unto the said Samuel L. Williams and Jennie L. Williams all rights which I have in and to the proceeds due or to become due, or from the sales of town property, or my interests in the said townsite, located on the above described premises, hereby relinquishing to them any claim that I have by any former agreements pertaining to any townsite on said lands above described.

"Witness my hand on this the 4th day of February, 1904.
                                        "SUSAN E. MAYS."

A demurrer to the amended answer was sustained and, the defendant refusing to plead further, judgment was entered on April 14, 1905, in favor of the bank for the full amount of the note, with interest and costs. A writ of error was allowed

and the cause was taken to the United States Court of Appeals for the Indian Territory. While the cause was pending in that court Oklahoma became a State, and by virtue of the Enabling Act the cause was transferred to the Supreme Court of the new State. On December 24, 1907, a petition was filed on behalf of the plaintiffs in error in the Supreme Court of the State, accompanied with bond, and it was prayed that the cause be removed into the Circuit Court of the United States for the Eastern District of Oklahoma, upon the ground "that by virtue of the Enabling Act it was entitled to be so removed because the suit herein is of a civil nature at law arising under the Constitution and laws of the United States." The application was denied, and, from a judgment of affirmance thereafter entered (95 Pac. Rep. 457; 20 Oklahoma, 274), this writ of error is prosecuted.

The errors assigned in substance are that the Supreme Court of Oklahoma erred in overruling the application to remove, in holding that error was not committed by the trial court in overruling the demurrer to the amended complaint, and in deciding that error was not committed in sustaining the demurrer to the amended answer.

*Mr. W. O. Davis,* with whom *Mr. L. S. Dolman* and *Mr. R. E. Thomason* were on the brief, for plaintiffs in error:

While ordinarily a compromise of a disputed right will support a promise to pay, if the consideration for the promise is the doing of that which is immoral, forbidden by law or against public policy, the promise will not be enforced even though it grow out of a compromise. If Mrs. Mays did not have the right to sell unallotted land in the Chickasaw Nation, and of this there can be no question, the sale which was otherwise illegal, is not made legal by a compromise. The right of Mrs. Mays to apply for unimproved land of which she was not in possession, was a personal privilege and not the subject of bargain and sale. It would encourage strife, produce delay, and seriously interfere with the public business, if members

of the tribe were permitted to. file contests in order to extort money or to be paid not to appear. Whenever there are conflicting claims to an allotment, the Dawes Commission has tried the case upon its merits regardless of the agreement of the parties.

The Secretary of the Interior has decided that any agreement made by the parties to an allotment contest may be disregarded by the Dawes Commission. *Creek Contest, No. 491, Quabner v. Greenleaf,* 10th Annual Report. No dismissal or confession of judgment is allowed. Testimony must be taken and the land must be awarded to the person who was the owner of the improvements thereon at the time of the filing of the first application. *Creek Contest, No. 267, Sookey v. Smith; Creek Contest, No. 260, Drew v. Conrad; Creek Contest, No. 263, Franklin v. Franklin; Creek Contest, No. 326, Penman v. Haikey.*

The Federal courts take judicial notice of the rules of the Land Department in contest cases. *Coha v. United States,* 152 U. S. 221.

The rights of the citizen claiming to own improvements on more land than he is entitled to take, are purely personal and he cannot convey title to any citizen as against one who is in possession of the land. *Chickasaw Allotment Contest, No. 104; Chickasaw Allotment Contest, No. 821.*

The Curtis Act was not intended to give illegal holders any vested or other right to dispose of their illegal possessions to the exclusion of other members of the tribe who have entered upon and selected their *pro rata* share prior to any attempted transfers by those whose possessions are in excess of their *pro rata* shares. *Creek Contest, No. 759; Chickasaw Contest, No. 112.*

The bill of sale after the institution of a contest is not binding on the commissioner. *Chickasaw Contest, No. 197, Jacobs v. Townsend;* see *Stevens v. Cherokee Nation,* 174 U. S. 445; *Cherokee Nation v. Hitchcock,* 187 U. S. 307, and numerous other cases in which this court has had occasion

to investigate and pass upon unfortunate conditions in the Indian Territory.

The Curtis Bill and the Atoka Agreement, 30 Stat. at L. 641, sought to remedy these conditions, and to prepare the country for equal distribution among the members of the tribe, and to give to each one his rights in severalty.

Where rights are equal and each member entitled to his *pro rata* without cost and without price, one member of the tribe who had no right to sell cannot charge another member of the tribe five thousand dollars for the privilege of taking forty acres of common land in allotment. *Coombs* v. *Miller,* 103 Pac. Rep. 590; *Swanger* v. *Mayberry,* 59 California, 91; *McLaughlin* v. *Ardmore Trust Co.,* 6 Oklahoma Law Jour., No. 11, p. 463; *Lingle* v. *Snyder,* 160 Fed. Rep. 627; *Anderson* v. *Carkins,* 135 U. S. 483, hold that where the contract is against public policy it cannot be enforced.

*Mr. S. T. Bledsoe,* with whom *Mr. J. B. Thompson* was on the brief, for defendants in error:

The Supreme Court of Oklahoma did not err in refusing to grant the petition for removal; the petition presented no sufficient ground. *Carson* v. *Dunham,* 121 U. S. 421; *Water Co.* v. *Defiance,* 191 U. S. 190; *West. Un. Tel. Co.* v. *Ann Arbor R. Co.,* 178 U. S. 239; *Gold Washing Co.* v. *Keys,* 96 U. S. 199; *Blackburn* v. *Mining Co.,* 175 U. S. 571; *Shreveport* v. *Cole,* 129 U. S. 36; *Florida Central R. R. Co.* v. *Bell,* 176 U. S. 321. See also following decisions of the Court of Appeals for the Indian Territory: *Ikard* v. *Minter,* 4 Ind. Ter. App. 214; *Hewlitt* v. *Hyden,* 69 S. W. Rep. 839; *Turner* v. *Gilliland,* 76 S. W. Rep. 253; *Blocker* v. *McLendon,* 98 S. W. Rep. 166, *Thomason* v. *McLaughlin,* 103 S. W. Rep. 595; *Arkansas* v. *Kansas & Texas Coal Co.,* 183 U. S. 185.

Compromises are favored in law. If a case is tried one party must ultimately lose. If compromises could be avoided at the instance of the party who would have been successful if the case had been tried, no compromise would ever stand.

If, in a trial upon the compromise obligation, the merits of the original controversy could be tried, compromises would be worse than useless in the settlement of litigation. *Buckner* v. *McElroy,* 31 Arkansas, 634; 1 Parsons on Contracts, 444; *Mason* v. *Wilson,* 43 Arkansas, 177; *Richardson* v. *Comstock,* 21 Arkansas, 70; *Burton* v. *Beard,* 44 Arkansas, 556; *Springfield & Memphis Ry. Co.* v. *Allen,* 46 Arkansas, 220; *Hennessey* v. *Baker,* 137 U. S. 78; *Mills County* v. *Burlington & Missouri River R. R. Co.,* 107 U. S. 557; *Knotts* v. *Preble,* 50 Illinois, 226; *A., T. & Santa Fe Ry. Co.* v. *Starkweather,* 21 Kansas, 238, by Brewer, J.; *Little* v. *Allen,* 56 Texas, 133.

Under both the homestead and preëmption laws personal residence for a given time, as well as improving the land are conditions precedent to the right to enter the lands or preëmpt the same. This personal occupancy of the land necessarily cannot be the object of barter and sale.

There is not now, nor has there ever been, any prohibition against a member of the Indian civilized tribe selling his improvements and right of occupancy. This right has been exercised from time immemorial. These transfers have been sustained by the Court of Appeals of the Indian Territory in numerous instances.

The four. Arkansas cases, *McFarland* v. *Matthews,* 10 Arkansas, 560; *Hughes* v. *Sloan,* 8 Arkansas, 149; *Carr* v. *Allen,* 5 Blatchford, 63; *Carson* v. *Clark,* 2 Scammon, 113, can be distinguished, and see *Gaines* v. *Rector,* 26 Arkansas, 192; *Gaines* v. *Hale,* 93 U. S. 3; *Randon* v. *Toby,* 11 How. 493.

The defendants seem to have repented their transaction, repentance extending to an attempted repudiation of the burden of the transaction, but not to surrendering the tainted property acquired through the alleged illegal transaction.

The transactions involved were not prohibited by law. Nothing in either agreement prohibits a member of either of said tribes from selling his improvements upon tribal lands or his right to possession thereto to another member of the tribe. In the absence of any statute to that effect Congress

will not be presumed to have intended that the members of these tribes should not be permitted to adjust their allotments by acquiring the improvements of other members upon different tracts of land.. See *Thomason* v. *McLaughlin*, 103 S. W. Rep. 595; *Turner* v. *Gilliland*, 76 S. W. Rep. 253; *Blocker* v. *McLendon*, 98 S. W. Rep. 166. Not only was there nothing illegal in the transaction, but the defendants having accepted, appropriated, used, and enjoyed the benefits accruing by virtue of the settlement entered into and having appropriated the proceeds from the sale of certain property as provided on the quit-claim deed are now estopped to controvert the rights of the complainants to recover upon the note sued on herein.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

In addition to discussing the merits, the defendant in error presses upon our attention a motion to dismiss, in substance upon the ground that no question of a Federal nature is presented. As the plaintiffs in error had no greater right to prosecute the writ of error than is possessed by suitors generally when seeking the review of a final judgment of a state court (§ 20, Enabling Act, as amended March 4, 1907, c. 2911, 34 Stat. 1287), it results that our power to review is controlled by Rev. Stat., § 709. Irrespective of other contentions, beyond peradventure a question of a Federal nature, however, was raised by the contention, denied by the state court, that a right or privilege existed under a statute of the United States to remove the cause into the Circuit Court of the United States, and the motion to dismiss cannot therefore prevail.

*As to the denial of the right to remove.*—The claim of plaintiffs in error is that the right to remove the cause into the Circuit Court of the United States arose from the fact that it was a suit arising under the Constitution and laws of the

United States, and that the right existed by virtue of § 16 of the Enabling Act, as amended on March 4, 1907, c. 2911, 34 Stat. 1286, the pertinent portion of which is as follows:

"SEC. 16. That all civil causes, proceedings, and matters pending in the Supreme or District Courts of Oklahoma Territory, or in the United States courts or United States Court of Appeals in the Indian Territory, arising under the Constitution, laws or treaties of the United States, or affecting ambassadors, ministers, or consuls of the United States, or of any other country or State, or of admiralty, or of maritime jurisdiction, or in which the United States may be a party, or between citizens of the same State claiming lands under grants from different States; and all cases where there is a controversy between a citizen of either of said Territories prior to admission and a citizen of any State, or between a citizen of any State, and a citizen or subject of any foreign State or country, in which cases of diversity of citizenship, there shall be more than two thousand dollars in controversy, exclusive of interest and costs, shall be transferred to the proper United States Circuit or District Court established by this act, for final disposition, and shall therein be proceeded with in the same manner as if originally brought therein: *Provided*, That said transfer shall not be made in any such case where the United States is not a party, except on application of one of the parties, in the court in which the cause is pending, at or before the second term of such court after the admission of said State, supported by oath, showing that the case is one which may be so transferred. The proceedings to effect such transfer, except as to time and parties, shall be the same as are now provided by law for the removal of causes from a State court to a Circuit Court of the United States."

In the petition for removal it was alleged in support of the right to remove—

"That the said suit involves the construction of the treaties and laws and acts of Congress concerning the allotment

of lands to the Choctaw and Chickasaw tribes of Indians under the acts of Congress approved April 29, 1898, and the act approved July 1, 1902, commonly known as the 'Atoka and the Supplemental Agreements between the Choctaw and Chickasaw tribes of Indians in the Indian Territory.'

"Petitioner shows that the controversy herein arises from the following facts:

"On February 4, 1904, appellant executed a promissory note to the assignor of appellee for five thousand ($5,000) dollars, due in ninety (90) days, with interest at 8 per cent from date.

"That the consideration for said note was that the payee thereof should cease to prosecute further and abandon a certain contest then pending before the Commission to the Five Civilized Tribes, in which the payee was contestant and the appellant herein was contestee.

"That the appellee took said note with full knowledge of the facts as disclosed by its pleadings. Appellant by demurrer and answer claims that the consideration is contrary to the letter and spirit of the act of Congress of April 29, 1898, and of July 1, 1902; that it is not a legal, valid or any consideration for the note."

The contention that the cause of action arose under the Constitution or laws of the United States is plainly untenable. Recovery by the bank was in no wise predicated upon any right conferred upon it or its assignor to contract, as was done, and the fact that the makers of the note relied for their defense upon provisions contained in certain statutes as establishing that the transaction upon which the right to recover was based was prohibited by law, "would only demonstrate that the suit could not be maintained at all, and not that the cause of action arose under the Constitution or laws of the United States." *Arkansas* v. *Kansas & Texas Coal Co.,* 183 U. S. 185, 190.

*As to the asserted Federal questions claimed to arise upon the rulings in respect to the overruling of the demurrer to the*

*amended complaint and the sustaining of the demurrer to the amended answer.*—In the light of the allegations of the complaint and the admissions (either express or implied from the failure to deny) contained in the amended answer, we think the record established that Susan E. Mays and Jennie Lee Williams were members either of the Choctaw or Chickasaw tribe of Indians; that Mrs. Williams selected for allotment and filed upon forty acres of land, upon which were improvements, situated adjacent to the town of Maysville, Indian Territory. The right of Mrs. Williams to select the land being disputed by Susan E. Mays, she filed a contest against the same before the Commission to the Five Civilized Tribes. When this was done, Susan E. Mays was not in the occupancy of any other land liable to allotment. Pending the proceedings, by way of compromise, Susan E. Mays agreed to abandon the contest instituted by her and relinquish her right to the allotment of the land in controversy and the improvements thereon, in consideration of the execution of the note in suit; that said note was executed for the benefit of the separate estate of Jennie Lee Williams and was delivered to Susan E. Mays, who thereupon abandoned the prosecution of her said contest before the Commission, and the allotment of the land to Mrs. Williams followed.

Compromises of disputed claims are favored by the courts (*Hennessey* v. *Baker*, 137 U. S. 78); and, presumptively, the parties to the compromise in question possessed the right to thus adjust their differences. We come then to consider whether, as claimed, there was a want of consideration for the note because of an express or implied statutory prohibition against the transaction which formed the consideration for the note.

In the demurrer to the amended complaint the claim advanced to defeat the right to recover on the note, which was substantially reiterated in the amended answer, was that, in truth, the sale was of the land and was illegal because not made according to the method for acquiring allottable tribal

land provided for in agreements between the Government of the United States and the Choctaw and Chickasaw governments, and because controversies as to allotments of land over which the Dawes Commission had jurisdiction could alone be determined by that body. We do not pause to consider whether these general allegations constituted such a special setting up of a right, privilege or immunity under a law or laws of the United States as is required by Rev. Stat., § 709. Considering the complaint and answer in their entirety, especially when viewed in the light of the allegations of the petition for removal, it clearly results, as stated in the petition for removal, that "the consideration for the said note was that the payee thereof should cease to prosecute further and abandon a certain contest then pending before the Commission to the Five Civilized Tribes, in which the payee was contestant and the appellant herein was contestee." In the argument at bar, while counsel has referred to statutory provisions and to various decisions which it is asserted establish that a sale by an Indian of part of an excessive holding of allottable tribal land or cf improvements thereon would not be a valid consideration for a note given to evidence the price of such sale, we have been referred to no statute nor cited to any treaty or agreement made with the Indian tribes giving rise even to the suggestion that where a *bona fide* contest existed between two Indians as to right to a tract. or, tracts of land arising from a claim based upon selection. on the one hand and on the other because of occupancy and improvements, it would be unlawful for the latter to abandon his contention as to his preferential right for a money consideration. Nor have we been referred to any statutory provision which either expressly or impliedly deprived the parties to a contest of their right to compromise simply because of the pendency of the contest before the Commission to the Five Civilized Tribes. An opinion of the United States Court of Appeals of the Indian Territory, a tribunal which was specially competent to pass upon a question of the kind

we are considering, lends support to the conclusion we have
reached that a member of either the Choctaw or Chickasaw
tribe, when as here there is no showing that such a member
was the holder of an excess of lands subject to allotment, was
not prohibited at any time from selling his improvements
upon tribal land or abandoning his right to the possession
thereof to another Indian. The opinion referred to was an-
nounced in the case of *Thomason* v. *McLaughlin,* 103 S. W.
Rep. 595, in which case, among other questions, the court
passed upon the validity of a sale of tribal land by one Indian
to another after the enactment of the act of June 28, 1898,
known as the Curtis Bill (June 28, 1898, ch. 517, 30 Stat. 495),
wherein, in § 29, is embodied the so-called Atoka Agreement.
After referring to a provision in § 17 of the act, limiting the
extent of an Indian's holding before allotment to the approx-
imate share of the lands to which he and his wife and minor
children were entitled, and making it a misdemeanor to retain
the possession of an excess of such share after the expiration
of nine months from the passage of the act, the court said
(p. 598):

"Inasmuch as the sale in this case was made within the
nine months' limit, this, of course, would not affect the va-
lidity of the sale, even though Lafon had been in possession
of more land than that to which he was entitled. It is a well-
known fact that many Indians, at the time of the passage of
this act, were in possession of large tracts of improved lands,
in excess of that to which they were entitled; and under the
laws and customs of the different tribes at that time this land
was lawfully held. The nine months' provision was intro-
duced into the Curtis Bill for the purpose of giving them an
opportunity of disposing of the excess and thereby to get
some remuneration for the improvements which they, by
their labor and industry, had lawfully made upon the lands.
And there is no provision in either of these sections, or any-
where else, that could be construed to deprive an Indian in
this Territory of the right to dispose of his holdings to another

Indian, if he desired to do so, in order that he might select his allotment on other lands. The statute did not intend that an Indian should be compelled to take his allotment on the land then held by him. He could sell his improvements and holdings to another Indian for allotment and lay his own on other land which he might find vacant, or which he might, in turn, purchase from another Indian. This method was adopted almost universally by the Indians, and it was not unlawful as between Indians. But to hold an excess of lands after the expiration of the nine months was unlawful and a crime."

While the asserted Federal questions are not so wholly devoid of substance as to be purely frivolous, they are nevertheless without merit, and the judgment must be and it is

*Affirmed.*