## HENKEL et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 6, 1912.)

No. 2,094.

INDIANS (§ 15*)—LANDS—PREFERENCE RIGHT TO ALLOTMENT—RIGHT TO RELINQUISH TO UNITED STATES.

 Indians, constituting the members of a family, who have settled on and improved a tract of tribal land on a reservation under provisions of a treaty agreement giving them such right of settlement, and also a preference right to select such lands on their allotment in severalty, may, with the approval of the Secretary of the Interior, sell their improvements and relinquish their preference right to the United States, reserving their right to select their allotments elsewhere, where the land is required for an irrigation project being constructed under Reclamation Act June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1911, p. 662).

 [Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 34, 37–44; Dec. Dig. § 15.*]

In Error to the Circuit Court of the United States for the District of Montana.

Action at law by the United States against Henry Henkel, Caroline Henkel, George Henkel, William Henkel, Lizzie Henkel, and Mamie Henkel. Judgment for plaintiff, and defendants bring error. Affirmed.

The United States brought an action against the plaintiffs in error to recover the possession of about 800 acres of land of the Blackfeet Indian reservation, in Montana. The complaint alleged that prior to November 5, 1906, the United States, pursuant to the Reclamation Act (Act June 17, 1902, c. 1093, 32 Stat. 388 [U. S. Comp. St. Supp. 1911, p. 662]), made surveys for the Milk river irrigation project, in the northern part of Montana, and that the lands described in the complaint were necessary for flowage and construction purposes in connection with said project; that the plaintiffs in error prior to that date settled on and occupied the said land by virtue of their being wards of the government and members of the Piegan tribe of Indians, with the exception of Henry Henkel, a white man, the husband of Caroline Henkel and the father of the other parties defendant to the action, all of whom resided together on the reservation; that on November 5, 1906, Caroline Henkel, for herself and her two daughters, together with George and William Henkel, made a written proposition to the Commissioner of Indian

Affairs to relinquish to the United States all claim to the lands then occupied by them, being the lands described in the complaint, and all buildings thereon, for the sum of $7,500, reserving to themselves the right to select their allotments of equal area as provided by law from the unoccupied lands of the said reservation; that Henry Henkel, as head of the family, approved said proposition; that on February 15, 1907, the proposition was approved and accepted by the Secretary of the Interior, who paid to Caroline Henkel the said sum of $7,500; that thereupon she, for herself and her two daughters, signed a receipt for said sum, and a relinquishment of all their rights to the land occupied by them, and said receipt was also signed by George and William Henkel, and approved by Henry Henkel. The defendants to the action demurred to the complaint on the ground that the court had no jurisdiction, and that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and the defendants filed their answer, in which they alleged that they, with the exception of Henry Henkel, were members of the Piegan tribe of Indians and wards of the government, residing upon the reservation, and that for more than 10 years before the commencement of the action they had, with Henry Henkel, resided thereon, and on the lands described in the complaint; that since the passage of Act March 1, 1907, c. 2285, 34 Stat. 1035, providing for the opening of the said reservation they have, and do select from the lands occupied by them, certain lands as the allotment for each, describing the same by their legal subdivisions; that under the provisions of such act they are entitled to have the same allotted to them, but that the allotting officers have refused and declined to allot the same to them; that under protest George, William, and Lizzie Henkel have selected lands elsewhere upon said reservation which have been allotted to them, but which they offer to relinquish and to take in lieu thereof the lands by them first selected; that Caroline Henkel is ready and willing to return the sum of $7,500 to whomsoever may be entitled to the same, with legal interest thereon, and offers to pay the same into the court for the use of the plaintiff. The defendant in error filed a demurrer to the matter so pleaded in the answer on the ground that the same does not state facts sufficient to constitute a defense. The demurrer was sustained, and thereafter judgment on the pleadings was rendered for the defendant in error.

Walsh & Nolan and T. J. Walsh, all of Helena, Mont., for plaintiffs in error.

Jas. W. Freeman, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the instruments signed by and on behalf of the plaintiffs in error are void for want of capacity on their part to make such disposition of their right to select the lands in controversy as their allotments, and for want of capacity on the part of the officers of the government, charged with the execution of the reclamation law, to acquire such lands or any lands within an Indian reservation, or to devote any of such lands to reclamation purposes. The reclamation project, for the construction of which the land in controversy is sought to be used by the United States, is a project for the irrigation of lands at a distance from the Blackfeet Indian reservation, and the lands in controversy are intended to be occupied for a dam and storage reservoir. By the agreement between the United States and the Blackfeet Indians of September 26, 1895 (29 Stat. 355), it was provided in article 5 that during the existence of the agreement no allotments of land in severalty should be made to the Indians, but that the

whole reservation should be considered to be held by them as a communal grazing tract, but it was provided:

"That any member of the tribe may, with the approval of the agent· in charge, fence any such area of land as he and the members of his family would be entitled to under the Allotment Act, and may file with the agent a description of such land and of the improvements that he has made on the same, and the filing of such description shall give said members of the tribe the right to take such lands when allotments of the land in severalty shall be made."

Article 7 provides that whenever, in the opinion of the President, the public interests require the construction of railroads or other highways, telegraph or telephone lines, canals or irrigation ditches, through any portion of the reservation, a right of way shall be "and is hereby granted for such purposes, under such rules, regulations, limitations and restrictions as the Secretary of the Interior may prescribe, the compensation to be fixed by said Secretary, and by him expended for the benefit of the Indians."

There is no allegation in the pleadings that the plaintiffs in error at any time filed with the agent of the reservation a description of the land occupied by them, or of their improvements thereon. The plaintiffs in error did not relinquish their allotment right, but merely their preference right to select for their allotment the particular tract of land on which they resided. In Williams v. First National Bank, 216 U. S. 582, 30 Sup. Ct. 441, 54 L. Ed. 625, the court recognized the right of one Indian to surrender and relinquish to another Indian his preference right to an allotment of a tract of land. The court quoted with approval the language of the United States Court of Appeals of the Indian Territory, in which it was said:

"The statute did not intend that an Indian should be compelled to take his allotment on the land then held by him. He could sell his improvements and holdings to another Indian for allotment, and lay his own on other land which he might find vacant, or which he might, in turn, purchase from another Indian."

It being established that an Indian on a reservation may relinquish his preference right to allotment to another Indian, it follows as a matter of course, and with stronger reason, that he may relinquish to the United States. It was only to prevent sales and transfers to other persons that restrictions were placed upon the power of Indians to alienate their lands or convey their rights of possession. There is no restriction on their right to sell or relinquish to the United States. Title to lands occupied by the Indians, whether on reservations or otherwise, has always been recognized as being in the United States. In Lykins v. McGrath, 184 U. S. 169, 22 Sup. Ct. 450, 46 L. Ed. 485, referring to the purpose of imposing restrictions on the Indian's power of conveyance, the court said that it was—

"in order that he should not be wronged in any sale he might desire to make; that the consideration should be ample; that he should in fact receive it, and that the conveyance should be subject to no unreasonable conditions or qualifications. It was not to prevent a sale and conveyance, but only to guard against imposition therein."

In Jones v. Meehan, 175 U. S. 1–8, 20 Sup. Ct. 1, 4 (44 L. Ed. 49), the court said:

"Undoubtedly the right of the Indian nations or tribes to their lands within the United States was a right of possession or occupancy only. The ultimate title in fee in those lands was in the United States, and the Indian title could not be conveyed by the Indians to any one but the United States without the consent of the United States."

Nor do we think there can be any doubt that the officers of the United States who conducted the negotiations and received the relinquishment and paid for the same acted within the scope of their authority. The Commissioner of Indian Affairs having management of all matters arising out of Indian relations, and charged with the duty of safeguarding the Indian's rights, acted under the direction of the Secretary of the Interior as required by law. By section 7 of the Reclamation Act, it is provided that whenever in carrying out the provisions of the act it should become necessary to acquire any rights or property "the Secretary of the Interior is hereby authorized to acquire the same for the United States by purchase or condemnation," etc. Under the authority of that act, the relinquishment was obtained.

We find no error. The judgment is affirmed.