**Manmohan SAHNI, Plaintiff,**

v.

**Marion BARRY, Defendant.**

**Civ. A. No. 81–2900.**

United States District Court,
District of Columbia.

April 24, 1987.

Manmohan Sahni, pro se.

Arthur D. Burger, Asst. Corp. Counsel, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

AUBREY E. ROBINSON, Jr., Chief Judge.

This matter comes before the Court for a determination of whether the parties to this action reached a valid settlement offer. The Court held an evidentiary hearing on March 26, 1987, pursuant to the February 2, 1987 record of the Court of Appeals for the District of Columbia Circuit, at which Plaintiff, his wife Renu Sahni, and two attorneys who represented Plaintiff in this matter, June Kalijarvi and George Chuzi, testified.

### FINDINGS OF FACT

Plaintiff filed a Title VII action in this Court against his former employer, the District of Columbia. Before trial was to commence, the Defendant offered to settle the case for $20,000. On December 6, 1985, Plaintiff met with his trial counsel June Kalijarvi at her office and she presented the settlement offer to him. Tr. 8, 11, 49. Plaintiff refused to settle the case [1] and the matter came before the Court for trial on December 9, 1985. Tr. at 49, 63.

On December 10, 1985, before the second day of trial was to begin, Ms. Kalijarvi asked Plaintiff for permission to reopen settlement negotiations. She was concerned that the testimony during the first day of trial had not been favorable to Plaintiff, and she was afraid he would lose the case. Tr. at 50. Plaintiff consented to reopening negotiations. Tr. at 50–51. Defendant once again offered to settle the case for $20,000 in cash. Tr. at 10–11, 12, 51. Plaintiff was unsatisfied with this figure, Tr. at 12, and asked Ms. Kalijarvi to seek a better settlement. Tr. at 52. Ms. Kalijarvi had several meetings with Assistant Corporation Counsel Arthur Burger who was handling the case for the District of Columbia. The conclusion of these discussions was that Defendant was unwilling to settle for more than $20,000 in cash. Tr. at 52.

After these negotiations were complete, Ms. Kalijarvi recommended to Plaintiff that Mr. Chuzi come to the Courthouse so that they could all talk. She telephoned Mr. Chuzi and he arrived at the Courthouse thereafter. Tr. at 53, 75–76. Plaintiff called his wife at the request of one of his attorneys and asked her to come to the Courthouse as well. Tr. at 13, 53, 65. She arrived around lunchtime and the four of them met in the Courthouse cafeteria. Tr. at 13–14, 37, 53.

During the conversation in the cafeteria, Ms. Kalijarvi recommended that Plaintiff accept the $20,000 settlement offer. Mrs. Sahni asked Ms. Kalijarvi why her assessment of the case had changed. Tr. at 14, 37–38, 54. Ms. Kalijarvi responded that based on Plaintiff's testimony the day before, she believed the Court could find that the District government had a legitimate, non-discriminatory reason for firing Plaintiff and that she believed Plaintiff would ultimately lose the case. Tr. at 54. Mr. Chuzi also told Plaintiff and his wife that they should consider the settlement offer because he and Ms. Kalijarvi were not sure any longer that Plaintiff would prevail on the merits and that if he did prevail, he would probably recover less than $20,000. He explained to the Sahnis that the risk-loss assessment of Plaintiff's case had shifted because of unexpected testimony by Plaintiff (that everyone in his office has been treated badly) and unfavorable evidence from another individual who Ms. Kalijarvi believed had made a very credible witness. Tr. at 76–79. The attorneys then suggested that Plaintiff and his wife discuss their options between themselves. Tr. 14, 38.

During their private conversation, Plaintiff's wife stated her opinion that Plaintiff's lawyers seemed to be dropping the case. She said that because he could not get another lawyer in the middle of trial, he should accept the settlement. Tr. 15–16,

---

1. Plaintiff testified that on November 29, 1985 he had a discussion with his attorneys at which he emphasized to them that he would have the final word on any settlement. Tr. at 7. Although they did not remember the specific conversation, both attorneys recognized that the decision whether to settle was their client's. Tr. at 47–48, 72–73.

21, 22, 38–40, 42. Plaintiff was unusually quiet during this discussion. Tr. at 39–40.

When the two attorneys again joined Plaintiff and his wife, Mrs. Sahni asked whether they could arrange for a postponement of the trial so that they could think about their options. Tr. at 40. Ms. Kalijarvi told them that a postponement was not possible and that they must come to a decision. Tr. at 15, 40. Mr. Chuzi again explained why the attorneys' perception of the case had changed. Tr. at 80–81. Mrs. Sahni then told the attorneys that she did not like the idea of settling, but that she and her husband had no choice in the matter and that they would accept the settlement. Tr. at 43, 54–55, 66, 82. She asked Mr. Chuzi to try to get "other things ... thrown in(to)" the settlement offer. She did not say that the $20,000 alone was unacceptable. Tr. at 43.

Plaintiff was present at this conversation, and although he did not speak, he "gave ... a passive gesture of acquiescence." Tr. at 82. The Court believes that Plaintiff's demeanor was crestfallen and unhappy, but that he agreed to the settlement." Tr. at 82. Mr. Chuzi testified:

> In my mind's eye I have a picture, and I will try to put that picture into words the best I can. It is a picture of Mr. Sahni cocking his head and nodding it, not a nod of affirmance, but a nod of so-be-it,.... It is not a 'yes, that is what I want' type of nod. But it is a nod of 'this is what is, and this is what is.' It was a combination of a shrug and a nod.

Tr. at 97. When asked by the Court whether it could be considered a gesture of defeat, Mr. Chuzi answered, "Yes." Tr. at 97–98.

Plaintiff could not dispute the testimony about this period of time because his "mind totally flipped," and his recollections were "hazy." Tr. at 16, 22, 23. He said that although he was sitting with his wife and his attorneys, "I don't recall participating any at all. I am not even sure whether I was there frankly." Tr. at 17. He testified that for a period of time he "was walking around in a daze or something." Tr. at 18. Plaintiff did know, however, that his attorneys had never told him that they would not represent him unless he accepted the settlement, nor did he ever ask them about this subject. Tr. at 17.

At the end of the conversation in the cafeteria, both attorneys asked the Sahnis if they were sure about settling. Mrs. Sahni answered, "Yes." Tr. at 83.

Following the conversation in the cafeteria, Plaintiff and Ms. Kalijarvi returned to the Fourth Floor of the Courthouse. Tr. at 23. There they met Dr. Harold Sadin, Plaintiff's physician who was scheduled to appear as a witness at trial. Plaintiff was present when Ms. Kalijarvi told Dr. Sadin that he would not be needed because the case has been settled. Plaintiff did nothing to interfere or indicate that he disagreed with Ms. Kalijarvi's statement. Tr. at 24–26, 56–57, 66–67. (Dr. Sadin wrote a letter concerning this incident, which Plaintiff filed with the Court on June 2, 1986. Dr. Sadin stated that he met Plaintiff and his attorney and that the attorney indicated that "his testimony was no longer necessary." He wrote that "Mr. Sahni seemed disconsolate," and that he (Dr. Sadin) "indicated that termination of this ordeal for him (Plaintiff) was in the best interest of his emotional well being despite the fact that he felt the settlement was far short of satisfactory.")

After they met Dr. Sadin, Plaintiff and Ms. Kalijarvi came back into the courtroom. Mr. Chuzi was in the courtroom and again asked Mr. Burger to improve the settlement. Mr. Burger refused. Tr. at 84. Then, Mr. Burger drafted a praecipe. Tr. at 8, 68. Ms. Kalijarvi testified that she signed it and showed it to Plaintiff. Tr. at 57, 68–69. Plaintiff said he never saw the praecipe and that Ms. Kalijarvi did not sign it in his presence, although he testified that he was in the courtroom and knew that Mr. Burger was doing something." Tr. at 26. Mr. Burger and Ms. Kalijarvi then walked into chambers. Tr. at 26, 58, 88.

After the attorneys left the courtroom, Plaintiff waited a length of time and then

went home at about three o'clock before the attorneys returned. Tr. at 19, 29. He had no urgent business to attend to, but left because he expected the lawyers to deal with whatever came up. Tr. at 29.

Plaintiff testified that his next contact with either of his attorneys was at about six o'clock that evening when he called Mr. Chuzi at his office. Tr. at 20, 30. He said that he asked Mr. Chuzi what the final settlement was if there was one and that when Mr. Chuzi answered it was $20,000 Plaintiff said that that figure was unacceptable. Tr. at 30. Mr. Chuzi does not remember this conversation taking place. Tr. at 89–90, 99–100. Plaintiff said he called Ms. Kalijarvi a couple days later to tell her the settlement was unacceptable. Tr. at 30. Ms. Kalijarvi does not recall this conversation, testifying that the next time she spoke with Plaintiff after going into chambers was a couple months later. Tr. at 58.

On April 4, 1986, Plaintiff's counsel filed a motion with the Court for an Order directing payment of the settlement amount of $20,000. Counsel stated in that Motion that they were "compelled to file (the) Motion because Plaintiff refuse(d) to sign the Settlement and Release documents proffered to him by Defendant." Motion at 1.

### CONCLUSIONS OF LAW

This Circuit has recognized that [s]ettlement agreements are in high judicial favor. *Schneider v. Dumbarton Developers, Inc.* 767 F.2d 1007, 1015 (D.C.Cir.1985) (citing *Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Autera v. Robinson,* 419 F.2d 1197, 1199 (D.C.Cir.1969)). Additionally, the Court has noted that "a valid settlement agreement, once reached, cannot be repudiated by the parties." *Autera,* 419 F.2d at 1201, n. 17.

It is the Court's conclusion that in this matter the parties reached a valid settlement agreement. It is clear to the Court that Plaintiff sought a more favorable settlement, and that he was unhappy that his case was to end for $20,000. It is also clear, however, that he authorized his at-

torneys to accept the $20,000 when he realized it was the best he could do. There is no other reasonable explanation why he allowed his witness, Dr. Sadin, to leave the Courthouse without testifying after Ms. Kalijarvi told him the case had been settled. There is also no plausible explanation why Plaintiff left the Courthouse at 3:00 p.m. on the second day of trial when he was previously told that he could not get a postponement. A litigant in Plaintiff's position, especially one who clearly recognized that he had the final word on any settlement, would not leave Court unless he was sure that a final settlement figure had been reached. For the same reason, his testimony that he called Mr. Chuzi on the evening of December 10, 1985 to find out what the final figure was is inconsistent with his present position. In this case, Plaintiff knew that he had authorized a settlement of his case for $20,000. His refusal at this time to sign the settlement agreement is unwarranted. The Court therefore enforces the settlement agreement reached between the parties.