CONRAC CORP., Plaintiff,

v.

AMERICAN TELEPHONE &
TELEGRAPH COMPANY, et
al., Defendants.

No. 82 Civ. 233 (ADS).

United States District Court,
S. D. New York.

Aug. 31, 1982.

Kelley, Drye & Warren, New York City, for plaintiff; Bud G. Holman, Robert S. Getman, Richard E. Donovan, New York City, of counsel.

Metzger, Shadyac & Schwarz, Washington, D. C., and Lynch, Rowin, Burnbaum & Crystal, New York City, for TeleSciences; Eugene J. Metzger, Samuel Shepard Jones, Jr., Washington, D. C., and Thomas P. Lynch, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for AT&T; Leonard Joseph, Andrew Donnellan, Jr., New York City, Langley Shook, Washington, D. C., of counsel.

## OPINION AND ORDER

SOFAER, District Judge:

Conrac Corporation ("Conrac") has initiated an antitrust suit against American Telephone & Telegraph Company ("AT&T"), various AT&T subsidiaries, TeleSciences, Inc. ("TeleSciences") and certain officers of AT&T and TeleSciences. (The claims against all individual defendants were dismissed by oral opinion on August 16, 1982). Both Conrac and TeleSciences are relatively small telecommunications manufacturing companies. AT&T is, of course, one of the world's largest corporations. Through its local operating subsidiaries and its Western Electric manufacturing subsidiary, AT&T dominates the telecommunications industry in the United States.

TeleSciences and the Government as well as Conrac have alleged that this AT&T dominance involved various violations of the antitrust laws. The Government's suit, initiated in 1974, was settled in January 1982. Under this recently approved settlement, the AT&T operating subsidiaries will become independent entities early in 1984. At substantially the same time as the Government/AT&T settlement was reached, TeleSciences and AT&T agreed to a settlement of an antitrust suit TeleSciences had brought against AT&T in September 1980. Under their settlement, AT&T agreed to pay TeleSciences forty cents for every dollar below $300 million in sales by TeleSciences to AT&T operating subsidiaries over an eight-year period. While the amount of sales so far made or planned under this agreement is unclear, AT&T has to date paid TeleSciences $40 million as a deposit against its future obligations under the settlement.

Conrac initiated the instant suit in April 1982. It delayed filing an action against AT&T until then because it expected an award of substantial business from AT&T which subsequently did not materialize. In response to a shareholder's question at Conrac's annual meeting, Conrac Chief Executive Officer Donald H. Putnam stated:

[W]hen it had become quite apparent that the bulk of the market had indeed been saved for Western Electric, TeleSciences instituted suit, I believe in '80. We quite consciously decided not to institute suit because at that point we had some very attractive business in negotiation with AT&T, and felt it was not good practice to sue a customer from whom we expected a great deal of volume. As circumstances turned out, I suspect we should have sued. TeleSciences received a very generous settlement from AT&T last year.

Conrac's complaint charges AT&T with illegally exercising its monopoly power to foreclose competition in the market for equipment designed to monitor telephone system usage (in industry parlance, "telecommunications support equipment"). These antitrust violations are substantially the same as those previously claimed by TeleSciences. In addition, however, Counts VI, VII and VIII allege that the TeleSciences/AT&T settlement violates the antitrust laws. Accordingly, Conrac seeks to enjoin that settlement and to obtain treble the damages that it causes from TeleSciences as well as AT&T.

This opinion concerns TeleSciences' motion to dismiss the counts involving its settlement with AT&T. TeleSciences bases its motion on two grounds: first, failure to state a claim upon which relief may be granted and, second, absence of subject matter jurisdiction due to a lack of ripeness. (TeleSciences also moved the Court to dismiss separately Count VIII, which charges various violations of New York State's antitrust laws, on grounds of federal preemption. This aspect of TeleSciences' motion is deferred.) Neither of the grounds asserted would justify outright dismissal at this time, but a stay is warranted of all proceedings concerning Counts VI, VII and VIII, save a limited amount of discovery, pending the outcome of plaintiff's remaining suit against the AT&T defendants or further order of the Court.

Conrac's theory of TeleSciences' antitrust violation begins with the assertion that the TeleSciences/AT&T settlement creates "a powerful, inexorable 'buy-TeleSciences' bias." (Complaint ¶ 79.) According to Conrac, this bias amounts to a "conscious division of the market" which, rather than relieving AT&T's monopoly on the telephone equipment market, actually creates "further foreclosure of substantial competition." (Pl.Mem. at 7.) TeleSciences does not deny Conrac's claim that the settlement could greatly boost its volume of business with AT&T. TeleSciences asserts, however, that the settlement would thus increase, not foreclose, competition by providing an incentive for AT&T's operating subsidiaries to fulfill their telephone equipment needs from a company other than AT&T's manufacturing subsidiary Western Electric. Moreover, TeleSciences questions the extent to which its agreement with AT&T will inevitably lead the operating company subsidiaries to increase their purchases from TeleSciences in view of the settlement of the Government's suit against AT&T whereby the operating companies will become independent entities. Finally, TeleSciences maintains that even if Conrac's legal theory has merit, its claims are unripe. In affidavits by one of its executives, the company claims no order or sale involving any product also manufactured by Conrac has been made under the AT&T settlement. (Def. Motion Ex. F & Def. Reply Mem. Ex. A.) TeleSciences therefore insists no case or controversy presently exists between TeleSciences and Conrac in that Conrac has suffered no conceivable antitrust injury from the TeleSciences/AT&T settlement.

■ TeleSciences' motion to dismiss is largely premature. Substantial discovery would be required on the issue of ripeness to define a relevant market by which to test TeleSciences' assertion that none of the products sold to the AT&T operating companies under the settlement was "in competition" with Conrac products. (Def. Reply Mem. at 2; see Pl. Sur-Reply Mem. at 9.) Moreover, although a cash settlement alone could plainly not provide a basis for a colorable antitrust claim, the $40 million payment received by TeleSciences as an advance against sales contemplated by the settlement, could conceivably represent antitrust injury to Conrac when viewed as part and parcel of an agreement substantially foreclosing the market for its products.

■ There is also little merit to TeleSciences' effort to obtain a dismissal under Federal Rule of Civil Procedure 12(b)(6). The complaint states a claim upon which relief may be granted and does not rely solely on a statement of legal conclusions to support this claim. By making it clear that the TeleSciences/AT&T settlement is at the crux of its claims, Conrac has plainly afforded TeleSciences adequate notice under Rule 12. *See George C. Frey Ready Mix Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir. 1977). To the extent TeleSciences' 12(b)(6) motion, laced as it is with a variety of factual assertions, should be read as a motion for summary judgment, *see* Fed.R.Civ.P. 12(b), it is inappropriate prior to the completion of even the most limited discovery. *See George C. Frey Ready Mix Concrete, Inc. v. Pine Hill Concrete Mix Corp., supra.*

■ Nonetheless, several considerations weigh in favor of imposing sua sponte a

stay on Conrac's claims concerning the Tele-Sciences/AT&T settlement. The courts have a strong interest in encouraging and, indeed, protecting facially legitimate settlements. "Compromises of disputed claims are favored by the courts; and, presumptively, the parties to the compromise in question possessed the right to thus adjust their differences." *Williams v. First National Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed.2d 625 (1910) (citation omitted). The Second Circuit only recently pointed out: "There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick,* Nos. 956–59, slip. op. at 3945 (2d Cir. July 14, 1982) (Friendly, J.). Because the costs of defending even the most unmeritorious antitrust claims are often high, *see generally* Posner & Easterbrook, *Antitrust* 595–600 (2d ed. 1981), suits challenging antitrust settlements as themselves violative of the antitrust laws could create a substantial disincentive to such settlements. Given the general policy favoring settlements and the presumption in favor of their legality, the value of the settlement process must not be diminished by permitting suits challenging antitrust settlements to proceed to trial without due scrutiny.

In the particular circumstances of this case a stay of Conrac's claims involving the TeleSciences/AT&T settlement provides an attractive device to protect the settlement from potentially unmeritorious or unnecessary litigation, while at the same time inflicting no prejudice upon plaintiff. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 167–68, 81 L.Ed. 153 (1936) (Cardozo, J.); *see Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382, 55 S.Ct. 310, 311, 79 L.Ed. 440 (1935).

■ AT&T is clearly the major target of the Conrac suit. Staying proceedings involving AT&T's settlement with TeleSciences will not prejudice Conrac's prosecution of its primary monopolization claims against the dominant firm in the telephone equipment market. Nor is such a stay likely to forestall Conrac from resuming its suit against TeleSciences at the appropriate time. The Court's condition on its stay is that Conrac be allowed discovery of all sales and payments made pursuant to the AT&T/TeleSciences settlement. Conrac is thus assured a full record of any anticompetitive, market-foreclosing impact of the settlement which it may wish to prove later.

The efficient and economical disposition of the present lawsuit supports a stay of Conrac's challenge to the TeleSciences/AT&T settlement. Given that TeleSciences was as much a victim of alleged AT&T monopolization as Conrac, the inclusion of a suit in which TeleSciences is a defendant would only confuse a jury faced with resolving the complex issues involved in Conrac's main allegations of AT&T monopolization. No doubt the two suits combined would make for an even more extended trial than will be required for the suit against AT&T alone. Furthermore, it is unclear that cautionary instructions could prevent a jury from improperly considering AT&T's settlement with TeleSciences as evidence of AT&T liability on the overall monopolization charges. *See* Fed.R.Evid. 408 & advisory committee note.

Realistically, moreover, a good chance exists that the resolution of Conrac's suit against AT&T will moot the need for discovery in or trial of the suit concerning the TeleSciences/AT&T settlement. Inasmuch as AT&T has settled both the Government's and TeleSciences' suits, an eventual settlement of Conrac's suit appears likely enough to warrant its consideration in planning this litigation. Conrac might even accept a sales or cash settlement similar to the allegedly unlawful TeleSciences/AT&T settlement; it is not the form of the TeleSci-

ences/AT&T settlement to which Conrac objects, but rather the fact that such an agreement has been reached only with TeleSciences. Even if a possible Conrac/AT&T settlement were not substantially similar to the challenged agreement, the terms of such a possible settlement might be probative on the reasonableness of the TeleSciences settlement.

■ Conrac points out correctly that agreements in settlement of litigation that set prices or expressly divide markets cannot survive antitrust scrutiny. Such per se violations of the antitrust laws are not, however, even alleged to be involved in the challenged settlement. Conrac's claimed antitrust violations are more subtle. The mine-run of market foreclosure cases involves contracts requiring exclusive purchases. *See, e.g., Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961). Even where such exclusive purchases are required, market foreclosure has not proven a readily defined offense. *See* Areeda & Turner, *Antitrust Law* ¶ 732c (1978). Here *no* purchases are actually required under the TeleSciences/AT&T settlement. As Conrac insists, the forty percent penalty AT&T must pay on any difference between its subsidiaries' purchases from TeleSciences and $300 million over eight years might effectively require AT&T to purchase from TeleSciences. Nonetheless, the settlement leaves open the option of mere cash payments. As TeleSciences points out, any purchases from TeleSciences will come at the expense of AT&T's Western Electric manufacturing subsidiary. Thus, apart from the fact that AT&T's ability to control its operating company subsidiaries is likely to become nonexistent under the Government/AT&T settlement, AT&T's incentives to direct the operating companies to purchase or not purchase from TeleSciences are at least mixed.

Moreover, market foreclosure is generally an offense committed by a lone monopolist or near monopolist. *See* Areeda & Turner, *Antitrust Law* ¶ 732 (1978). Conrac's suit does not claim that, at least prior to the challenged settlement, TeleSciences possessed significant market power. The one company with the market power to cause foreclosure was AT&T; yet it is hardly obvious how AT&T foreclosed Conrac's market in a way violative of the antitrust laws by agreeing to purchase more from TeleSciences. As Conrac's counsel pointed out at oral argument, the sales-or-cash settlement device was for AT&T merely a way of obtaining a relatively inexpensive settlement from TeleSciences. (Trans. of July 1, 1982 Hearing at 15.) From Conrac's point of view, the "buy-TeleSciences" bias created by the TeleSciences/AT&T settlement may well appear little different from the "buy-Western" bias that both Conrac and TeleSciences claimed to be the key to AT&T's illegal monopolization of the telecommunications support equipment market. (*See* Conrac Complaint ¶¶ 51, 78.) As far as antitrust law is concerned, however, these biases are plainly not identical in that TeleSciences, unlike Western Electric, is not an AT&T subsidiary.

The Supreme Court has cautioned that the antitrust laws "were enacted for 'the protection of *competition* not *competitors*.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (emphasis original) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)). Although the TeleSciences/AT&T settlement may ultimately be proven a violation of the antitrust laws, Conrac's challenge to the settlement has a background and conceptual originality that makes it suspiciously like an expression of competitive sour grapes. *Cf.* Areeda & Turner, *Antitrust Law* ¶ 317d (1978) (summary disposition issues often arise in suits by unhappy competitors whose "sense of oppression is not matched by any entitlement to legal relief"). Given the courts' interest in protecting facially legal settlements, the unlikelihood of any substantial prejudice to plaintiff, the judicial efficiencies in separating claims against the settlement from the overall monopolization claims against AT&T, the substantial probability that the settlement challenge will never have to be litigated, and the novelty

if not tenuousness of the theory of the settlement's illegality, it seems just and sound to stay Conrac's claims concerning the TeleSciences/AT&T settlement at this time.

All proceedings on Counts VI, VII and VIII of the complaint are therefore stayed, except that Conrac may seek discovery of TeleSciences limited to a monthly accounting of (1) all sales or sales contracts made by TeleSciences pursuant to its settlement with AT&T and (2) all payments made by AT&T to TeleSciences pursuant to that settlement.

SO ORDERED.