AMERICAN SECURITY
VANLINES, INC., et al.

v.

Robert J. GALLAGHER, Appellant.

No. 85–5344.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 15, 1986.

Decided Jan. 31, 1986.

Douglas J. Rykhus, Washington, D.C.,
for appellant.

Bruce E. Mitchell, for appellees.

Before GINSBURG and SILBERMAN,
Circuit Judges, and McGOWAN, Senior
Circuit Judge.

Opinion Per Curiam.

PER CURIAM:

Defendant-appellant Robert J. Gallagher,
an attorney, dishonored an agreement settling
an action in which he had been
charged with malpractice and breach of
fiduciary duty. The agreement, incorporating
modifications suggested by the trial
judge, was entered as a district court judgment
on March 1, 1984. Gallagher made
initial payments pursuant to the agreement
but soon defaulted, prompting plaintiffs'
application to the district court, on May 22,
1984, to enforce the settlement. The district
court considered Gallagher's several
challenges to the agreement and, in a comprehensive
Memorandum, rejected the attacks
as meritless. *American Security
Vanlines, Inc. v. Gallagher*, No. 83–0074
(D.D.C. Feb. 27, 1985). Gallagher now appeals
from the district court's order enforcing
the settlement.

We affirm and, on our own motion, direct
appellant and attorney for appellant to pay
the costs and counsel fees reasonably incurred
by appellees in responding to an
appeal that fully warrants the characterization
"frivolous." *See* 28 U.S.C. §§ 1912,
1927; Fed.R.App.P. 38; *cf.* Fed.R.Civ.P. 11.

Gallagher offers no tenable argument
for disturbing the careful adjudication
of this case by the district court. In
the main he repeats implausible, farfetched,
or tardily-raised objections answered
with thoroughgoing clarity in the dis-

trict court's Memorandum. His central thrust is that he should be released from an undertaking he now regrets because, when he entered into the settlement agreement, he was in a "distraught frame of mind occasioned by his belief that he would lose the [malpractice/breach of fiduciary duty] case," whereupon he would face a judgment he could not pay and, eventually, referral to the Grievance Committee leading to disbarment. Brief of Appellant at i, 9, 10.

Neither in his brief nor at oral argument did Gallagher suggest any distinction between his case and that of any other attorney charged with malpractice or serious breach of duty who enters a settlement, understandably with a heavy mind, and later regrets his agreement. Instead, Gallagher urged that his plight is "virtually the same" as that of a personal injury plaintiff, destitute, sorely disabled, unfamiliar with the language of the law, indeed, barely able to speak English, who is pressed into signing a release for a relatively modest sum by her own attorney. *Id.* at 10 (asserting as authority controlling the instant case *Autera v. Robinson,* 419 F.2d 1197 (D.C.Cir.1949)). The analogy is not well made. However, it typifies the quality of argument imposed upon the district court, and now upon us, in this case. For further exposition of Gallagher's stout resistance to the objectively reasonable settlement, we include as an appendix to this disposition the cogent Memorandum filed by the district court. No additional comment from this bench is necessary. *See* D.C.Cir.R. 13(c).

■ This appeal, we conclude, has unconscionably delayed secure receipt by appellees of the periodic payments Gallagher agreed to make in exchange for the termination of the malpractice/breach of fiduciary duty claims that opened this litigation. Both Gallagher and counsel who advanced frivolous argument for him, thereby multiplying proceedings unreasonably and vexatiously, may be held accountable for the expenses and counsel fees reasonably incurred by appellees in responding to the

appeal. *See* 28 U.S.C. §§ 1912, 1927; Fed. R.App.P. 38; *In re TCI Limited,* 769 F.2d 441, 445 (7th Cir.1985). We accordingly order that appellees' costs and counsel fees reasonably incurred on appeal shall be borne jointly and severally by appellant and attorney for appellant. The parties shall endeavor diligently and in good faith to agree upon the fee. If they are unable to reach an agreement promptly, appellees shall submit to the court a statement setting out their counsel's hours and rate for the representation reasonably furnished in this appeal.

The court's mandate in this case shall issue forthwith.

*It is so ordered.*

### APPENDIX

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———

Civil Action No. 83–0074

AMERICAN SECURITY VANLINES, INC., *et al.,* PLAINTIFFS

v.

ROBERT J. GALLAGHER, DEFENDANT

———

[Filed Feb. 27, 1985]

———

### MEMORANDUM

#### I. BACKGROUND

This action is now before the Court on plaintiffs' motion to unseal and enforce the settlement agreement reached in this matter and defendant's motion for new trial.

Plaintiff American Security Vanlines, Inc. ("ASV") filed suit July 2, 1982. The complaint alleged that defendant Robert J. Gallagher, an attorney with considerable experience in proceedings involving the Interstate Commerce Commission ("ICC"), had committed malpractice in negligently representing ASV in the transfer and sale

of certain Certificates of Public Convenience and Necessity for interstate motor common carriers from ASV to Gray Moving & Storage, Inc. ("Gray Moving") and the processing of the requisite applications and documentation before the ICC. ASV also alleged that defendant breached a fiduciary duty owed to ASV in undertaking inconsistent and conflicting representation of Gray Moving after agreeing to represent ASV. Specifically ASV asserted that after ASV entered into a contract for sale and temporary lease of an ASV certificate to Gray Moving, Mr. Gallagher submitted additional applications to the ICC on behalf of Gray Moving for new certificates of public convenience and necessity, making it unnecessary for Gray Moving to purchase ASV's certificate and causing Gray Moving to cancel its contract to buy the ASV certificate. ASV sought $237,500 in actual damages plus interest, $500,000 in punitive damages, and attorneys' fees.[1]

A trial to the Court began on February 28, 1984. Both sides were represented by counsel.[2] On February 29, after the close of plaintiffs' case, defendant Gallagher took the stand as part of defendant's case. In the course of Mr. Gallagher's testimony, he made a number of statements that plaintiffs characterize as damaging admissions, stating that "I obviously recognized that I made a mistake" and that "later study, and particularly the progression of this case has made me realize I was incorrect and that I should have taken those steps [withdrawal]; I should have withdrawn."

At the request of counsel for defendant, the trial was then recessed for a short period to allow defendant to confer with counsel. Shortly thereafter, at the request of the parties, the trial was recessed for the day to enable the parties to explore the possibility of resolving the dispute by means of a settlement agreement. On March 1, 1984, the Court was presented with a draft agreement to which all parties had tentatively assented and the Court offered a number of suggested modifications that were accepted by the parties. The Court then entered an order reprinted at the margin[3] setting out the settlement

---

1. On March 1, 1984, pursuant to the settlement agreement, the Court granted a motion to add Mr. Harold W. Breffle, president of American Security Vanlines, Inc., as an additional party plaintiff in the case. Mr. Breffle had been a witness in the trial and claimed that Mr. Gallagher's actions constituted intentional infliction of emotional injury. The amended complaint sought $500,000 in damages with regard to this claim.

2. On February 28, 1984, a praecipe was filed with the Court entering the appearance of Keith I. Clearwaters as co-counsel to Mr. Gallagher. The record contains no subsequent praecipe indicating Mr. Clearwaters had ceased to serve in this role.

   Mr. Gallagher's efforts to set aside the agreement place great emphasis on the claim that he was not represented by counsel in the settlement negotiations. See, e.g., Reply to Show Cause Order Why Settlement Agreement Should Not be Enforced at 3–4 ("The Settlement Agreement was entered into by a defendant representing himself with no other independent legal counsel advising him as to the settlement ..."). Support for this claim can be found in the fact that Mr. Gallagher signed the agreement on his own behalf and then added the words *"pro se."* Mr. Clearwaters' signature does not appear on the document. On the other hand, an affidavit submitted by Gregory J. Digel, plaintiffs' counsel, indicates Mr. Clearwaters did participate at least to some extent in the settlement discussions.

   Regardless of whether or not Mr. Clearwaters participated in the negotiations, the Court is not persuaded that Mr. Gallagher should be excused from the settlement on this basis. This conclusion is reinforced by the fact that Mr. Gallagher is himself an experienced attorney.

3. In light of the relief sought by plaintiffs and the record herein, the Court believes it appropriate to unseal the settlement agreement. The Court reprints it below because of the repeated references to it in this memorandum. The agreement provides as follows:

   SETTLEMENT AGREEMENT

   This jundgment (sic) entered by counsel this 1st day of March, 1984.

   ORDERED:

   1. Harold W. Breffle shall be added as a party plaintiff.

   2. Defendant shall pay to American Security the sum of $50,000.00 payable in three (3) equal installments on March 10, 1984, May 1, 1984 and July 1, 1984.

   3. Defendant shall pay to Breffle the sum of $240,000.00 payable $4,000.00 monthly for 60 months commencing April 1, 1984, which indebtedness shall be evidenced by a note executed by defendant and defendant's wife.

terms to which Mr. Gallagher and counsel for plaintiffs had agreed. In pertinent part, the settlement agreement required Mr. Gallagher to make payments totalling $290,000 to plaintiffs. Mr. Gallagher's payment obligations to Mr. Breffle were to be evidenced by a note executed by Mr. Gallagher and his wife that was secured by a second mortgage on the principal residence of Mr. and Mrs. Gallagher. In the event of a breach of any provision of the agreement by Mr. Gallagher, the settlement agreement provided for judgment to issue in favor of American Security Vanlines in the amount of $100,000 and in favor of plaintiff Breffle for $300,000, less any amounts previously paid under the terms of the agreement. The Court ordered the settlement agreement filed under seal.

On May 22, 1984, plaintiffs, alleging that defendant had breached the settlement agreement, filed a motion for its enforcement. According to an affidavit from Mr. Breffle, Mr. Gallagher sent Mr. Breffle only two checks for $4,000 each to meet his obligation to pay Mr. Breffle $4,000 per month. Mr. Breffle reported that the second of these checks had been returned to his bank by Mr. Gallagher's bank with a notation that the account had been closed.

According to an affidavit from Mr. Bruce E. Mitchell, counsel for ASV, Mr. Gallagher provided ASV with five post-dated checks to cover his payment obligations to ASV. The Mitchell affidavit also reported that the second of these checks, dated April 10 for $8,333.34 had been dishonored. Plaintiffs also maintained that defendant had failed to provide plaintiffs with the note and second mortgage discussed in the settlement agreement. Accordingly, plaintiffs asked the Court to unseal the settlement agreement and enter judgment for plaintiffs in accordance with its terms.

On June 21, 1984, the Court issued an order requiring defendant to show cause in writing within thirty days why plaintiffs' motion should not be granted. Defendant in his reply to the show cause order and in the hearing held on this matter has never represented that plaintiffs' claims of breach of the agreement are unfounded. Nor has he sought to deny that he entered into the agreement or to contest plaintiffs' interpretation of the terms of the agreement.

Instead, Mr. Gallagher has attacked the settlement agreement on a number of grounds and urged the Court not to enforce it.[4] Specifically Mr. Gallagher contends that: a) defendant should be excused

---

The note shall provide that in the event of default, the balance then outstanding shall immediately be due and payable, plus 15% interest from the date of default. The note shall be secured by a second mortgage or other appropriate security instrument, duly recorded on the principal residence of defendant. The note shall provide that plaintiff shall be limited to the security insofar as defendant's wife is concerned.

4. Defendant shall, within 30 days hereof and at his expense, provide an appraisal of his principal residence, evidence of title and an opinion letter of counsel certifying title and providing assurance that the security instrument or mortgage in favor of Breffle has been duly filed and recorded and is a valid second lien or encumbrance on the property. Defendant warrants that the equity existing in his principal residence on which the second mortgage will attach is no less than $190,-000.00, applicable taxes and filing fees to be paid by defendant.

5. Breffle hereby agrees to make available to defendant or otherwise to transfer to de-

fendant all certificated authority held by American Security. All costs in effecting such transfer shall be assumed by defendant.

6. Upon breach of any condition or provision of this agreement, this action may be reopened and judgment shall issue and may be enforced in favor of American Security in the amount of $100,000.00 and in favor of Breffle in the amount of $300,000.00, both as compensatory damages, less any amounts previously paid under the terms of this settlement agreement.

/s/Oliver Gasch

/s/ Bruce E. Mitchell
/s/ Gregory J. Digel
    Attorneys for Plaintiffs
/s/ Robert J. Gallagher, pro se

4. Mr. Gallagher has also pressed these arguments in a second round of briefs requested by the Court in September and in his motion for a new trial filed on November 20, 1984. As Mr. Gallagher has noted, the motion for a new trial is predicated on a finding that the settlement agreement should not be enforced.

from the agreement as "it was entered not because of the facts involved in the proceeding, but because of defendant's concern that his ability to continue to practice law might be jeopardized"; b) the requirement that defendant make payments to American Security Vanlines is void as such payments are, in reality, intended to pay plaintiffs' attorneys' fees in this case; c) the requirement that defendant make payments to Harold W. Breffle "is contrary to the facts" as Mr. Breffle was not a client of the defendant; d) the agreement is void as it "attempts to coerce" a nonparty, Mrs. Patricia Engel Gallagher; and e) a decision by the Court not to enforce the agreement would be consistent with the interests of justice. The Court has carefully considered defendant's arguments in the context of the record as a whole and finds Mr. Gallagher's challenges to the agreement to be without merit.

## II. ANALYSIS

Few public policies are as well established as the principle that courts should favor voluntary settlements of litigation by the parties to a dispute. *See, e.g., Williams v. First Nat'l Bank*, 216 U.S. 582, 595 [30 S.Ct. 441, 446, 54 L.Ed. 625] (1910) ("[c]ompromises of disputed claims are favored by the courts" (citation omitted)); *Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C.Cir.1969) ("[v]oluntary settlement of civil controversies is in high judicial favor" (footnote omitted)); *Gomes v. Brodhurst*, 394 F.2d 465, 468 (3d Cir.1968); *McCarthy v. Cahill*, 249 F.Supp. 194, 198 (D.D.C. 1966) ("The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims" (citation omitted)).[5] Because of this strong public policy, settlement agreements are to be "upheld whenever possi-

ble." *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir.1971), *cert. denied*, 404 U.S. 851 [92 S.Ct. 87, 30 L.Ed.2d 90] (1971).

"[A] settlement is as binding, conclusive and final as if it had been entered in a judgment." *Clinton Street Greater Bethlehem Church v. Detroit*, 484 F.2d 185, 189 (6th Cir.1973) (citations omitted). Indeed, in this case, the settlement agreement was contained in an order issued by the Court and stipulated that judgment was to be entered for specified amounts if defendant breached the agreement. Such a stipulation "is regarded as removed from the ordinary stipulation ... which the court is free to set aside ... in its broad discretion." *Marrajo [Marrujo] v. Chavez*, 77 N.M. 595, 426 P.2d 199, 201 (1967).

An agreement to settle litigation is a contract[6] and may not be unilaterally rescinded unless principles of contract law would authorize rescision. *See, e.g., Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C.Cir.1982); *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (D.C.Cir.1978) ("a litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship" (citation omitted)); 15A C.J.S. § 31 (1967) (compromise agreement may be impeached for cause sufficient to invalidate a contract).

In this context, the Court turns first to Mr. Gallagher's argument that the agreement should not be enforced as it was "entered not because of the facts involved in the proceeding, but because of defendant's concern that his ability to continue to practice law might be jeopardized." Reply to Show Cause Order Why Settlement Agreement Should Not Be Enforced at 4. Mr. Gallagher maintains this concern was "aggravated" by virtue of certain state-

5. Courts and commentators have identified two principal bases for the policy of promoting settlements: settlements produce a substantial savings in judicial resources and thus aid in controlling backlog in the courts; and settlements promote efficient use of private resources by reducing litigation and related costs. *See, e.g., Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d 775, 783 (6th Cir.1975), *cert. denied*, 425 U.S. 912 [96

S.Ct. 1509, 47 L.Ed.2d 763] (1976); *Conrac Corp. v. American Telephone & Telegraph*, 546 F.Supp. 429, 432 (S.D.N.Y.1982).

6. *See, e.g., Florida Education Assn., Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir.1973) (enforcement of settlement agreements governed by principles applicable to contracts generally).

ments made by Bruce E. Mitchell, counsel for plaintiffs. *Id.* According to the first-hand account contained in Mr. Gallagher's affidavit:

> During the course of attempting to negotiate a settlement counsel Mitchell asked me if I had ever read the presiding Judge's decision on cases involving attorneys as defendants. I replied that I had not. He advised me that I should read them and stated that the decisions were tough if not harsh. I inferred from this conversation that the Judge's decisions frequently involved referral to disciplinary committees.

Affidavit of Robert J. Gallagher, ¶ IV.

Even assuming the accuracy of Mr. Gallagher's account of Mr. Mitchell's statements and of Mr. Gallagher's characterization of his reasons for entering into the agreement, this challenge to the settlement agreement must fail. This conclusion is unchanged even if the Court reads Mr. Gallagher's arguments as asserting a defense of duress.

A party induced to enter a settlement agreement because of duress may be entitled to relief. *See, e.g.,* 15A C.J.S. § 33(a). According to the Restatement of Contracts test adopted in the District of Columbia, duress is

> duress is "any wrongful threat of one person by words or other conduct that induces another to enter a transaction under the influence of such fear as precludes him from exercising free will and judgment...." Duress may be exercised by "wrongful acts that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction."

*Sind v. Pollin,* 356 A.2d 653, 656 (D.C. 1976) (quoting Restatement of Contracts § 492–93 (1931)). Here defendant has alleged no facts that could meet this test.[7] To begin with, Mr. Gallagher has not alleged that Mr. Mitchell himself made *any*

threats but only that Mr. Mitchell characterized the Court's prior decisions as being "tough" on lawyer-defendants. The conclusion that this could not be a "wrongful act" is reinforced by the fact that this Court's decisions are matters of public record and therefore that Mr. Gallagher, an experienced attorney, was free to make his own determination as to the accuracy of Mr. Mitchell's characterization. Mr. Gallagher does not maintain that Mr. Mitchell's remarks constituted fraud or that Mr. Mitchell, who represented the parties suing Mr. Gallagher in this litigation, had a duty to provide Mr. Gallagher with any other information concerning this Court's prior decisions.

With regard to Mr. Gallagher's assertion that he entered into the agreement "because of defendant's concern that his ability to practice law might be jeopardized" and not because of the facts in this case, this too is insufficient as a matter of law to establish a duress defense. By definition, all defendants considering settlement do so based upon consideration of the adverse consequences that might result if the action proceeds and they do not prevail on the merits. In this case, Mr. Gallagher believed that one such risk was the possibility that he would not be able to practice law. Mr. Gallagher has not alleged that his consideration of that risk resulted from a "threat" or "wrongful act" of plaintiffs or their counsel. He has not alleged that plaintiffs or their counsel acted in any way to "preclude[ ] him from exercising free will and judgment." *Sind v. Pollin,* 356 A.2d at 656. Even if true, the claim that Mr. Gallagher agreed to the settlement because of fear of the adverse consequences of the litigation is insufficient as a matter of law in this case to establish a defense of duress. *See also Chrysler Credit Corp. v. Capital Hill Dodge, Inc., et al.,* Civil Action No. 79–2175 (D.D.C. Dec. 7, 1982), slip op. at 9 (fear of consequences if case not

---

**7.** The same is true with regard to the modern reformulation of this standard contained in Restatement Contracts 2d §§ 174–77 (1979).

settled, "rarely, if ever, amount[s] to duress").

The Court next considers defendant's attack on the payments to Mr. Breffle as improper in light of Mr. Gallagher's claim that Mr. Breffle was not Mr. Gallagher's client as well as defendant's challenge to the payments he must make to ASV as inappropriately awarded "attorneys' fees." With regard to each of these arguments, Mr. Gallagher's arguments rest on the merits of the positions of the parties in the underlying litigation. For example, Mr. Gallagher characterizes the payments he is required to make to ASV as attorneys' fees [8] and argues that the record does not contain evidence sufficient to award attorneys' fees. Such arguments on the merits are not sufficient to upset a settlement agreement. Instead, the existence of the settlement agreement bars inquiry into the antecedent claims and arguments concerning the merits of the underlying litigation. *See, e.g., Clinton Street Greater Bethlehem Church v. Detroit*, 484 F.2d at 189. Prior to the agreement, Mr. Gallagher had the option of continuing with the trial and attempting to convince the Court that an award of attorney's fees was not warranted or that Mr. Breffle's claim for damages was insufficient as Mr. Breffle had not been a client of Mr. Gallagher. Instead, Mr. Gallagher exercised his right to settle the litigation. Having done so, Mr. Gallagher may not rely on the merits to defeat the agreement to which he assented.

Defendant's next challenge to the agreement is the claim that it is void as it implicates the rights of Mrs. Patricia Engel Gallagher, Mr. Gallagher's wife, who is a nonparty to the litigation. The Court does not find this argument to be persuasive. It is true that the agreement required Mr. Gallagher to provide a note signed by Mrs. Gallagher secured by a second mortgage on their residence as security. The provision for Mrs. Gallagher's signature no doubt stemmed from plaintiffs' recognition that under New Jersey law, a note signed only by Mr. Gallagher would not provide plaintiffs with a satisfactory security interest in the jointly-owned property. *See, e.g., Retz v. Mayor & Council, Township of Saddle Brook, Bergen County*, 134 N.J.Super. 290, 340 A.2d 667, 670 (1975) (where property is held by tenancy by the entirety, one spouse cannot bind the interest of the other on a mortgage), *reversed on other grounds*, 69 N.J. 563, 355 A.2d 189 (1976). Nevertheless, the agreement is not rendered unenforceable on this basis.

Mr. Gallagher's argument fails to take account of the fact that the agreement did not bind Mrs. Gallagher but only required Mr. Gallagher to produce a specified type of security. As plaintiffs point out, this feature of the agreement is no more coercive than a contract requiring a party to obtain security from any other source, such as a surety, bank or other financial institution. In such a case, as in the case at bar, the failure of a contracting party to obtain the promised security does not impose liability on a nonparty to the contract. Thus, it is obvious that defendant's challenge based on the alleged coercion of Mrs. Gallagher is without merit.[9]

Finally, the Court considers defendant's assertion that the Court should vacate the settlement agreement as this course would be "appropriate to compel justice." Defendant's argument in this regard relies

---

**8.** The settlement agreement itself does not characterize the required payments to ASV in this fashion. The only reference to the nature of any required payments is contained in paragraph six discussing the "compensatory damages" defendant is required to pay to both plaintiffs in the event of a breach of the agreement.

**9.** The Court's reasoning as to the insufficiency of defendant's argument with regard to the alleged coercion of Mrs. Gallagher is reinforced by an additional factor. According to an affidavit from plaintiffs' counsel that has not been contradicted by Mr. Gallagher, it was Mr. Gallagher himself who sought to have his debt secured by a second mortgage on the New Jersey residence. Plaintiffs had proposed a number of alternatives, including defendant's purchase of a single premium annuity or his assignment or pledge of securities to pay the debt. Thus, rather than coercing Mrs. Gallagher, the agreement merely required Mr. Gallagher to provide a form of security he himself had suggested.

exclusively on *Kelly v. Greer,* 334 F.2d 434 (3d Cir.1964),[10] where the Court stated:

> [T]he district court has jurisdiction to vacate its own orders of dismissal which were based upon the stipulation of the parties in reliance upon their settlement agreement. Rule 60(b), Fed.R.Civ.P. However, the district court appears to have been of the view that the dismissal of the original actions with prejudice deprived it of jurisdiction to entertain the ancillary complaints seeking the enforcement of the settlement agreement. But there can be no question of the power of a Federal district court to vacate its own orders entered in civil actions over which it had original jurisdiction "whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 [1099] (1949).

*Kelly,* 334 F.2d at 436–37.

The *Kelly* case provides little support for the relief defendant seeks. To begin with, *Kelly* itself concerned whether a plaintiff could enforce a settlement agreement as part of an action which had been dismissed with prejudice. *See id.* at 436. *Kelly* merely held that after the defendant had allegedly failed to comply with the agreement, the trial court could vacate its earlier dismissal of the action to consider a motion to enforce the agreement. The Third Circuit merely allowed the nonbreaching party to seek recovery for the breach.[11] It did not, as defendant urges the Court, excuse the breaching party from his obligations under a settlement agreement merely because of a claim that enforcement would be unduly harsh.[12] Indeed, to do so would be inconsistent with the extensive authority quoted at the beginning of this section holding that courts should seek to enforce settlements and limiting the instances in which courts will excuse nonperformance.

However, even assuming that a settlement agreement can be set aside if such relief is consistent with the interests of justice, defendant has failed to demonstrate any basis for finding this standard satisfied in this case. Instead, defendant's argument on this point merely constitutes a repetition of the individual challenges discussed and rejected above. *See, e.g.,* Brief in Support of Reply to Motion to Show Cause at 4–5. Taken in the aggregate, these arguments are no more persuasive than they were individually. Although it is the policy of the law to favor hearing a litigant's claim on the merits, here that policy is outweighed by the need to achieve finality in litigation. *See* 11 Wright & Miller, *Federal Practice & Procedure* § 2857 at 159 (1973).[13]

### III. Conclusion

The Court has carefully considered defendant's challenges to the settlement agreement and finds them to be without merit. Accordingly, the Court will not interfere with the agreement of the parties.

The Court of Appeals for this Circuit has authorized summary enforcement of settlement agreements "in connection with problems capable of resolution without attendant hazard to the interests of the parties." *Autera v. Robinson,* 419 F.2d at 1200. This is such a case. Defendant does not deny entering into the settlement agreement or raise complex factual issues related to its formation or consummation which require testimonial exploration. *Id.* Ac-

---

**10.** For a discussion of the subsequent history of *Kelly v. Greer,* see *infra* note 12.

**11.** Accordingly, the Third Circuit remanded "the case to the district court with directions to vacate its orders dismissing the original actions and reinstate them to the status quo existing immediately prior to the entry of the orders of dismissal, *i.e., following the reading into the record of the settlement agreement* but prior to the orders dismissing the action." *Kelly v. Greer,* 334 F.2d at 437 (emphasis supplied).

**12.** In fact, on remand of *Kelly v. Greer,* the District Court found that "the parties are bound by the terms of the settlement stipulation" and ordered that it "be complied with." This result was affirmed by the Third Circuit in a subsequent opinion. *See Kelly v. Greer,* 365 F.2d 669, 671–72 (3d Cir.1966).

**13.** Also without merit is defendant's prayer for a new trial. Defendant has not shown manifest error of law or fact or newly discovered evidence or any other basis sufficient to grant a new trial. *See generally* 6A Moore's Federal Practice ¶ 59.07 (2d ed. 1983).

cordingly, the Court does not believe further proceedings are necessary to rule on plaintiffs' motion to enforce the settlement.

Thus, pursuant to the discussion above, the Court finds that defendant has breached his obligations under paragraphs two and three of the settlement agreement to which he assented.[14] Accordingly, the Court will issue an order entering judgment in favor of plaintiff American Security Vanlines in the amount of $91,666.66[15] and in favor of plaintiff Breffle in the amount of $296,000.00.[16]

/s/ Oliver Gasch
OLIVER GASCH
Judge

Date: Feb. 26th, 1985

---

14. Defendant breached his obligation to make a total of $50,000 in payments to plaintiff ASV pursuant to paragraph two when he failed to make the second installment payment as required by May 1, 1984.

Defendant breached his obligation to make a total of $240,000 in payments to plaintiff Breffle pursuant to paragraph three when he failed to make the second monthly installment payment as required by May 1, 1984. Furthermore, defendant breached his obligation under paragraph three by refusing to provide Mr. Breffle with the note secured by a second mortgage on his property as required.

15. Paragraph six of the settlement agreement provided that in the event of defendant's breach, judgment would be entered in favor of ASV for $100,000.00 "less any amounts previously paid under the terms of this settlement agreement." According to the Mitchell affidavit, only one payment of $8,333.34 by defendant to ASV has cleared. Defendant has not disputed this claim.

16. Paragraph six of the settlement agreement provided that in the event of defendant's breach, judgment would be entered in favor of Mr. Breffle for $300,000.00 "less any amounts previously paid under the terms of the settlement agreement." According to the Breffle affidavit, only one payment of $4,000.00 by defendant to Breffle has cleared. Defendant has not disputed this claim.